[S. F. No. 12793. In Bank.—December 28, 1928.]

**K. J. FOGARTY et al., Petitioners, v. DEPARTMENT OF INDUSTRIAL RELATIONS OF THE STATE OF CALIFORNIA et al., Respondents.**

Matthew A. McCullough for Petitioners.

G. C. Faulkner, Leo H. Susman, John J. Briare and Thos. J. Straub for Respondents.

THE COURT.—The petition of the respondent Pacific Gas and Electric Company for a rehearing in this cause was granted solely for the purpose of elaborating upon that portion of our opinion (269 Pac. 641) wherein it is determined that the application of the dependents of Harlan Fogarty for adjustment of claim was timely filed. In the petition for rehearing it is urged that we overlooked the "vital feature" in our treatment of this phase of the case, viz., that "there was no valid subsisting claim to adjust." With this assertion of petitioner we cannot agree. In the interest of clarity we will express in greater detail our views upon this subject to the end that confusion may not result from that portion of the opinion now assailed. Harlan Fogarty, while still a minor, died June 24, 1926, a

victim of chronic endocarditis. As will more fully herein-after appear the performance of his duties while in the employ of the Pacific Gas and Electric Company from May 8 to June 3, 1924, aggravated this heart condition and thus precipitated the train of symptoms culminating in his death. Fogarty, during his lifetime, neglected and failed to insti-tute proceedings for the collection of the disability indem-nity to which he was unquestionably entitled under the provisions of section 9 (b) of the Workmen's Compensation Act. (Stats. 1917, p. 831.) ■ The right to institute such proceedings while ordinarily lost to an employee if not exercised within six months after the date of injury (sec. 11 [b] 1) is saved as to a minor employee at least until the appointment of a guardian for such minor (sec. 11 [d]). ■ Therefore, in the absence of the appointment of a guardian and by virtue of his minority, there continued to exist in Harlan Fogarty up to the very time of his death a right to institute proceedings for the collection of the disability indemnity above referred to. Upon his death this right to collect the accrued but theretofore unclaimed compensation passed to his dependents (sec. 9 [b] 3). And this, without any necessity for the institution of proceedings by the minor employee during his lifetime. ■ The act, so far as we have been able to ascertain, does not in express language designate any particular period of time within which the dependents of a deceased employee must institute proceedings for the collection of any accrued compensation but, whatever that period might be, we need not now con-cern ourselves, for, as indicated in our opinion heretofore filed and hereinafter adopted, "certain of the applicants are minors, against whom the limitations of time provided by the Workmen's Compensation Act (sec. 11 [d]), (Stats. 1917, p. 831) do not run unless and until a guardian has been appointed." A guardian for the minor dependents of Fogarty had not been appointed, as stated in the opinion, until they were brought into the proceeding then pending before the respondent Commission as parties claimant. This being so, it necessarily follows that the application of these minor dependents for the accrued compensation due the deceased was timely filed. Having thus secured jurisdiction to pass upon this claim, the Commission was invested with jurisdiction to determine *all* claims, whether for accrued

compensation or for death benefits and whether claims of the minor dependents or other dependents, for section 11 (a) of the act, as quoted in the opinion, contains the proviso that "the filing of an application with the Commission for any portion of the benefits prescribed by this Act shall render this section inoperative as to all further claims of any person or persons for compensation arising from the same transaction. . . . " By virtue of this proviso the provisions of section 11 (b) 2 of the act, so strongly relied on by petitioner, became "inoperative" as to this particular proceeding and it is unimportant, therefore, so far as the application for the death benefit is concerned, that Fogarty did not die within a year after his injury or that a disability payment had not been made or an agreement for its payment made or proceedings for its collection commenced by the deceased during his lifetime. Petitioners' contention in this respect is, therefore, without merit. With this prefatory statement we hereby adopt as the decision of the court the opinion written by the Chief Justice, heretofore filed. It reads:·

"The dependents of Harlan Fogarty, deceased, are seeking to have annulled an award of the respondent Commission denying their application for adjustment of claim. At the time of his death, which occurred on June 24, 1926, the deceased was a minor. Commencing May 8, 1924, and for a period terminating, by reason of his disability, on June 3, 1924, Harlan Fogarty was employed by the Pacific Gas and Electric Company as a laborer and rough carpenter on the timber flume which supplies water to one of its power houses. Before he began any actual work, but on the same day that he assumed his duties as such employee, the deceased was subjected to a thorough physical examination at the hands of Dr. W. P. Sawyer, representing the employer. The examination disclosed that the deceased at the time was a normal youth of nineteen years, in apparent excellent health. The examining physician testified before the respondent Commission that 'There [was] no pathology on the whole card. It [was] one of the cleanest cards of any examination I ever made.'

"The deceased commenced work immediately ˙following this physical examination. On June 2, 1924, together with other workers, he was summoned to repair a break in the

flume some eighty-four feet in length, which interrupted the flow of water to the power house. In their endeavor to complete the repair work with all possible expedition the men worked laboriously for many hours. One shift was engaged continuously without sleep for eighteen hours, another for sixteen hours, and a third, of which the deceased was a member, for thirty-eight hours. During this prolonged period the men were subjected by day to the heat of the sun's rays and by night to the cool air. There is evidence to the effect that during the night Fogarty worked in wet clothes and shoes, and 'felt pain and stiffness in both knees.' By reason of exhaustion and the presence of pains in his knees and ankles he was incapable of going to his home, some distance away, when the work was done, and he remained with a fellow-employee during the night of June 3d. While there he received some slight care intended to relieve his plight. He was conveyed by automobile the following day to his own home. Dr. Sawyer, who, as previously noted, had examined him, was called and found the young man to be the victim of an acute attack of rheumatism, for which he prescribed salicylates, a specific for acute rheumatism. Dr. Sawyer's medical statement, introduced in evidence, shows that the knees and ankles of the deceased were at that time swollen, hot and tender, and that he had a pulse rate of 110 and a temperature of 103.4.

"Dr. Sawyer attended Fogarty until July 10th, at which time he entered the Sutter Hospital, in Sacramento, and came under the care of Dr. J. W. James. The hospital records show that deceased had a pulse rate of 120 and a temperature of 102 on that date. Dr. James found 'Nearly all small joints swollen and tender; heart increased in all diameters; and murmur replacing first sound. Tongue heavily coated. Patient rather stupid in action.' As to the patient's past history the record noted: 'Occasional sore throat eight years ago; had tonsils removed. Otherwise well; present illness first serious trouble.' Fogarty remained in the hospital approximately ten days, and then visited with an aunt for two weeks, continuing all the while under the care of Dr. James. It appears that some years prior to his employment by the Pacific Gas and Electric Company Fogarty had been operated upon by Dr. G. E. Chappell and had his tonsils removed. In the fall of 1924 Dr. Chappell

examined him and found that he was suffering from enlarged heart and valvular trouble, as well as weakness of the heart muscle. The doctor advised him to remain at home and to do no manual labor. The rheumatic and heart condition continuing, in October, 1925, Dr. Chappell removed certain remnants of deceased's tonsils, in the hope that it might effect a cure. On March 24, 1926, the deceased was taken to the Krull Hospital, in Sacramento, where, upon examination, Dr. Chappell found his condition aggravated, and by means of an operation removed fluid from the pleural cavity. A similar operation was thereafter performed by Dr. Brown. Fogarty was continuously nursed and cared for during the following months. He died on June 24, 1926, the death certificate giving chronic endocarditis, which is a diseased condition of the membrane lining the valves and cavities of the heart, as the cause of death.

"At the conclusion of the several hearings of the dependents for adjustment of their claim, the respondent Commission, on September 23, 1927, made its findings and award denying the application, and discharging the employer from all liability in connection with the death of the deceased. Among other things it was found that the death of Harlan Fogarty had not been caused or precipitated by his employment or by any injury arising out of or in the course of such employment. The applicants' petition for a rehearing was granted and the cause resubmitted without the taking of further testimony. The findings thereafter filed declared the evidence to be insufficient to establish that the deceased had received an injury arising out of and in the course of employment, or that the employment had caused any temporary disability. It was further found that the disability complained of had not been caused by any injury arising out of and in the course of said employment, or by said employment; that the deceased died from disease, and said death had not been caused or precipitated by the employment or by an injury arising out of or in the course of said employment; that the death of the deceased had not ensued within one year from the date of the alleged injury, and that no disability payment had been made for the injury complained of, or agreement made therefor, or proceedings for its collection commenced, and that no right,

therefore, accrued to the applicants to claim a death benefit as a result of the death of the deceased.

"Because of this latter finding there is first presented for consideration the question whether the application for adjustment of claim had been timely filed. Certain of the applicants are minors, against whom the limitations of time provided by the Workmen's Compensation Act (sec. 11 [d]) do not run unless and until a guardian has been appointed. Therefore, the respective claims of the minor brothers and sister of the deceased, both for the death benefit provided by section 9 (c) and for the accrued compensation covered by section 9 (b) 3 of the act, were not barred, because the appointment of their father as their guardian was not made until they, as parties claimant, were brought into the proceeding then pending before the Commission. We are of the view that, under the provisions of section 11 (a) of the act the filing of the application of such minors gave to the Commission jurisdiction to hear and determine the claims of any and all persons for compensation arising from the same transaction, including the claims of the parents of the deceased, whether the latter were seasonably filed or not. Section 11 (a), *supra,* provides: 'Unless compensation is paid or an agreement for its payment made within the time limited in this section for the institution of proceedings for its collection, the right to institute such proceedings shall be barred; provided, that the filing of an application with the Commission for any portion of the benefits prescribed by this act shall render this section inoperative as to all further claims of any person or persons for compensation arising from the same transaction, and the right to present such further claims shall be governed by the provisions of section 20(d) and section 65(b) of this act.' This court had occasion, in the case of *Great Western Power Co.* v. *Industrial Acc. Com.,* 196 Cal. 593, 602 [238 Pac. 662, 666.], to interpret the foregoing section of the act. It is there declared: 'By both constitutional enactment . . . and legislative decree . . . the Industrial Accident Commission is vested with wide powers, to the end that the administration of legislation enacted to create and enforce a complete system of workmen's compensation "shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character." The Workmen's

Compensation Act provides (sec. 17[c]) that there shall be but one cause of action for each transaction coming within the provisions of the act. All claims brought for medical expense, disability payments, death benefits, burial expense, liens, or any other matter arising out of such transaction, may, in the discretion of the Commission, be joined in the same proceeding at any time. Going one step further, we see no reason why the legislature may not have intended to provide, in the proviso to section 11 (a) that when a claim for any portion of the benefits prescribed by the act has reached the point where it is necessary or expedient to submit the matter to the decision of the Industrial Accident Commission, the whole subject matter of the controversy, including the further claims of the applicant, or of any and all other persons, should be thereby submitted to the jurisdiction of the Commission for a complete determination, provided, of course, that all claims relating to the transaction be presented within the life of the continuing jurisdiction of the Commission. That, we conclude, was the legislative intent, and the effect of the proviso added to section 11 (a).' Having reached such conclusion, we held in that case that the Commission had jurisdiction to make an award in favor of a dependent grandparent of the deceased even though it appeared that such claimant had not been made a party to the proceeding before the Commission until after the expiration of the time limited for the institution of proceedings for the collection of the death benefit. It therefore follows that the respective claims of the parties hereto, both for accrued compensation and for the death benefit, may properly be determined by the Commission.

"This brings us to a consideration of the important point as to whether the illness and death of the deceased were compensable within the provisions of the Workmen's Compensation Act. This court is well aware that its power to overthrow a finding on ·a question of fact made by the respondent Commission is confined to those cases in which there is no substantial evidence to support the finding. That is the exact situation now before us. The history of the case, as testified to by the witnesses for the applicants and for the employer, presents an unbroken chain of events indicative of the fact that, whatever the condition of the health of the employee had theretofore been, the exposure and

exhaustion to which he was subjected precipitated the train of symptoms which culminated in his death. In *Singlaub* v. *Industrial Acc. Com.*, 87 Cal. App. 324 [262 Pac. 411], it is declared to be the 'unquestioned law that where the death of an employee may be traced to two causes, first, to that of a primary disease, and, secondly, to over-exertion in the work in behalf of his employer in which the employee is engaged at the time of his death, the employer or his insurer is liable. In other words, notwithstanding the previous diseased condition of the employee, and in the natural consequence of which the inevitable death of the employee will ensue, if satisfactorily established that the demise of the employee, though primarily caused by his idiopathic condition, nevertheless was superinduced by over-exertion of the employee arising out of his employment, the liability of the employer is fixed. As is said in *Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 594 [200 Pac. 17, 20]: "If the disability, although arising from a chronic heart trouble, was brought on by any strain or excitement incident to the employment, the industrial liability still exists. Acceleration or aggravation of the pre-existing disease is an injury in the occupation causing the acceleration. (Citing cases.)" ' To the same effect is *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712], wherein it appeared from the medical testimony adduced that while the deceased must have been affected with a previous heart affection the conditions of his employment were such as to have precipitated his collapse sooner than would otherwise have happened.

"In the case at bar an effort was made by the employer to show that the deceased employee was the victim of a latent and pre-existing rheumatic and heart condition. The evidence is in apparent conflict on this point. There is also testimony which points to a 'focus of infection' as a major causative factor. There is, however, but one conclusion which can be drawn from the whole evidence, and that is that, aside from all other factors, the employment, with its consequential exposure, was the precipitating cause, and induced the acute attack of rheumatism with which Fogarty was immediately thereafter seized; and, further, that such attack not only could, but actually did, lead to the heart condition which ultimately proved fatal. It is necessary to only briefly epitomize the evidence relating to this phase

of the case to demonstrate that it falls squarely within the rule of the cases previously cited.

"Dr. Sawyer, the physician who examined the deceased prior to his employment by the Pacific Gas and Electric Company, and later attended him, testified that at the time he made the examination he found nothing suggesting that the deceased was then suffering from or a victim of either endocarditis or myocarditis, and that there was no doubt in his mind but that the acute attack of rheumatism was brought on by the exposure, which was the sudden cause of it. Dr. Chappell, called by the employer, testified that with all the facts before him he would say there was a causal connection between the prolonged period of labor, with its resultant exposure and exhaustion, and the acute attack of rheumatism suffered by the deceased. Dr. R. W. Harbaugh, assistant medical director of the respondent Commission, informed the referee in the proceeding that exposure to cold or wetting, or sudden changes of temperature, are among the factors in determining the onset of an attack of rheumatism; that it is generally recognized that a certain kind of heart disease is directly connected with an attack of rheumatism, and he had no doubt but that that was 'what happened in this particular case.' There was much evidence as to the 'major' and 'minor' factors of heart disease, and some of the witnesses refused to commit themselves beyond the assertion that the strain and exposure to which the employee was subjected was only 'some slight factor' in precipitating the acute and fatal attack. But the record read as a whole—and we have given it a most searching scrutiny—removes any and all doubt, and sets the case beyond the realm of argument, inference or conjecture. The employer's own witnesses established that the deceased's employment was a factor in the precipitation of the rheumatic and heart condition which ultimately led to his death. There is not a substantial contradiction on that point. The only fair inference that may be drawn from the evidence is that, if it should be conceded that the deceased was the victim of a latent and pre-existing rheumatic and heart condition, a condition which, in our opinion, was not established, the exposure and exhaustion incident to his employment accelerated his collapse. Any contrary inference is inconsistent with the verity of the record. The respondent

Commission therefore erred when it found that the deceased's illness and death had not been caused or precipitated by his employment or by an injury arising out of or in the course of his employment.''

The award is annulled and the cause is remanded, with directions to the Commission to proceed as outlined and to further find upon the degree of dependency, in order to properly ascertain the amount of the benefits payable to the claimants.