[Civ. No. 10625.   Second Appellate District, Division One.—March 26, 1936.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, JAMES TAYLOR et al., Respondents.

Donald E. Ruppé for Petitioner.

Everett A. Corten for Respondents.

DESMOND, J., *pro tem.*—The validity of an award of the Industrial Accident Commission is before us on *certiorari.*

On May 20, 1935, one Joe Reed died within an hour after he had been trampled and gored by "Prince", one of a herd of seven elephants, which he and a man, named Schubert, were exercising in a ring at winter quarters of Al G. Barnes Circus, located at Baldwin Park. The deceased left no known dependents, and the only claims presented or allowed on account of his injury and death were for surgical and hospital expenses $30; for burial expenses $150. The referee, who heard the case, found that deceased was in the joint employment of two organizations, Metro-Goldwyn-Mayer Studios and Al G. Barnes Circus, and that both were jointly liable for the sums mentioned; accordingly, he ordered their insurance carriers to pay the claims. Petitioner in this case is insurance carrier for Al G. Barnes Circus.

The findings and award are attacked on two grounds: Insufficiency of evidence to establish the joint employment; and failure to find specifically that the injury sustained by deceased "occurred in the course of, and arose out of, the employment." Considering the second objection first, we refer to that portion of the finding reading as follows: "Joe Reed was injured when attacked by an elephant on May 20, 1935, the injury proximately causing his death on the same date. On this date he was on the payroll of Metro-Goldwyn-Mayer Studios and was employed by said studio for the purpose of assisting in the care and training of an elephant named 'Queen'. At the time of his injury he was engaged in exercising the elephant 'Queen' and six other elephants, all elephants being the property of Al G. Barnes Circus. The care and attention being given the elephants other than the ele-

phant 'Queen' was for the use and benefit of the Al G. Barnes Circus, and was rendered with the approval of the said Al G. Barnes Circus. The said Joe Reed was, at the time of his injury, in the joint employ of Metro-Goldwyn-Mayer Studios and Al. G. Barnes Circus at Baldwin Park, California.''

We believe there is a definite implication, if not a direct finding, in this statement that the fatal injury was suffered by deceased while employed and arising from that employment, material facts in issue (sec. 20, Workmen's Compensation Act of 1917), consequently we are of the opinion that the findings are not, as claimed, fatally defective in this respect. (*Ethel D. Co.* v. *Industrial Acc. Com.,* 219 Cal. 699, 709 [28 Pac. (2d) 919] ; *Armstrong* v. *Industrial Acc. Com.,* 219 Cal. 673, 676 [28 Pac. (2d) 672].)

However, we believe that the other objection raised by petitioner is sound. Reviewing the facts as they come before us, it appears that George Emerson, an animal trainer, representing Metro-Goldwyn-Mayer Studios, contracted with the Barnes Circus for the services of ''Queen.'' One of the scenes in a picture known as ''O'Shaughnessy's Boy'' called for an elephant that would permit a tiger to ride upon its back and ''Queen'' was selected for the part. Paul Eagles, local representative of Al G. Barnes Circus, made the contract with Mr. Emerson. It was necessary to train the elephant for her part in the picture and, to assist him in handling and caring for the beast, Emerson hired two elephant hands, Dewey and Schubert, both of whom had been working for the circus. A few days later Dewey quit, and in his stead, Mr. Emerson hired the deceased, Joe Reed, an experienced elephant hand, at $5 per day. Mr. Emerson described his duties in relation to the elephant as follows: ''Well, the one thing he had to take care of her, feeding, cleaning and taking care of her, and to help me to saddle her and things like that. We had a howdah we put on her, and to help probably on everything in general like the act we were breaking, and assist in every way he could.'' Emerson and Reed on the morning of May 20th, had ''Queen'' out on the lot, walking her around, ''to see if she would carry a howdah'' (an elephant saddle in the shape of a platform). Shortly before noon, she was chained in the barn. At approximately 1 o'clock, after Emerson, Reed and Schubert had lunched together, Emerson went to a part of the lot where a steel

arena was located. Without any knowledge on his part, Reed and Schubert took the herd of elephants, among them "Queen" and "Prince", out of the barn for exercise upon another part of the lot. There the accident in which this unfortunate man lost his life occurred, the noise of the elephants then for the first time attracting Emerson's attention to the fact that they were in the exercising ring.

Mr. Eagles testified: "I told him (Reed) he was employed by M–G–M, that George Emerson was his boss, took him right over there and had a definite understanding." Mr. Emerson also testified that he personally hired Joe Reed. So far as the evidence discloses, no one instructed Reed or Schubert to exercise "Queen" or any of the other elephants on the afternoon of May 20th, and no caretaker, supervisor or other employee of the circus knew that they contemplated doing such a thing or that they were so engaged. Schubert testified: "He (Reed) was unchaining a couple of elephants and he was going; he asked me to get a hook and help him out." The fact that "Queen" was in the herd and that she was the special charge of Reed as an employee of Metro-Goldwyn-Mayer Studios supports the finding that he was in the employ of that organization when exercising her, especially in view of Mr. Eagles' testimony that under the contract the Studios were "to have 'Queen', and assume all risks, feed, water and care for her". Since, in exercising "Queen", Reed with his partner Schubert undertook voluntarily to exercise six other elephants, did that make either or both of them employees of the circus that owned the animals? We do not think so. That they were employees of Metro-Goldwyn-Mayer Studios, we believe, was sufficiently proven, but that they were also special employees of Al G. Barnes Circus within the rule of *Stacey Bros. Gas Const. Co.* v. *Industrial Acc. Com.*, 197 Cal. 164 [239 Pac. 1072], cited by respondent Commission, was not established, in our opinion. For nothing was developed at the hearing to indicate that "the employee of the alleged independent contractor came under the control and direction of the other party to the contract and suffered injury as the result of such direction and control". In fact all the evidence relating to the contract between the studios and the circus seemed to indicate that, except for housing "Queen" when she was not being used by the picture company, the circus had nothing whatever to do with her or her attendants

during the period of hiring, and certainly it cannot be said that by the contract the employees of Metro-Goldwyn-Mayer were called upon to exercise the six elephants, other than "Queen". We have not overlooked the fact that, at one time, Reed had been in the employ of the circus; but "around the first of the year was the last time he worked for us", according to the uncontradicted testimony of the witness Eagles.

It will be noted that the referee found that "the care and attention being given the elephants other than 'Queen' was for the use and benefit of the Al G. Barnes Circus, and was rendered with the approval of the said Al G. Barnes Circus". So far as the record goes there is nothing to indicate that the work done for these six elephants, at least so far as Reed was concerned, was known to, authorized by, or approved by the circus or any of its officers, employees or agents.

The award against petitioner is ordered annulled.

Houser, P. J., and York, J., concurred.