[Civ. No. 6022.   Third Appellate District.—June 6, 1938.]

ELIZABETH M. PETERS, Respondent, v. SACRAMENTO CITY EMPLOYEES' RETIREMENT SYSTEM et al., Appellants.

Hugh B. Bradford, City Attorney, for Appellant.

George L. Popert for Respondent.

THE COURT.—This is an appeal from a judgment granting to petitioner a peremptory writ of mandate requiring respondents-appellants to pay to her as the widow of William A. Peters, a fireman in the employ of the city of Sacramento at the time of his death, a pension equal to one-half of the monthly salary paid decedent at the time of his death based upon the finding that the deceased met his death "as the result of injuries received in the performance of duty" as provided by section 173 (e) of the charter of Sacramento. (Stats. 1935, p. 2511.)

A hearing was had before the retirement board, which found that the deceased died solely as the result of a heart affliction, and under the provisions of section 173 (a) and (b) allowed petitioner two-thirds of one-half of the monthly salary.

A transcript of the proceedings, which contained all the evidence taken by the board, was introduced in evidence before the trial court, and it devolved upon that court to determine whether petitioner was bound by the conclusions of the retirement board. Respondent claims that the evidence was such that the board exercised a legal discretion in its determination, and that its findings are conclusive. In this connection respondent relies upon the provisions of section 168 of the charter, reading as follows:

" . . . The Retirement Board shall be the sole authority and judge under such general ordinances as may be adopted by the City Council, to determine when members may receive and may continue to receive benefits of any sort under the Retirement System, and shall have exclusive control of the administration and investment of such fund or funds as may be established, provided that all investments shall be of the character legal for insurance companies in California."

The essential facts are undisputed. William A. Peters was a captain in the Sacramento Fire Department. An alarm of fire rang in at 11:23 P. M. Captain Peters and his crew responded, and upon arriving at the scene of the fire Peters

took over the usual duties required by his position. One witness testified he saw Peters coming from the rear of the house "and he was running toward the front to direct his men back to the line on one side of the building. . . ."

Mr. Boothby, a battalion chief, testified it was the duty of a captain to cover fires and lead off lines into the burning building. In this case the witness saw Captain Peters leading a line of inch and one-half hose into the rear of the building. Another witness testified he saw Peters pulling hose from the back of the engine and saw him struck by a coupling, knocking off his cap. Shortly thereafter as he was working with his men and walking toward the truck, he fell to the pavement striking his head on the rear of the truck. He was immediately taken to the hospital, but died before the ambulance reached its destination. An autopsy was held, and the finding was "death as a result of coronary sclerosis, left coronary artery occluded."

Petitioner called two physicians to give their opinions as to the effect of Peters' activity in fighting the fire in view of the fact that at that time he had coronary sclerosis. The respondent called no medical men, relying on the testimony of the two doctors called by petitioner.

Dr. Thomas testified that in coronary sclerosis the exciting causes are always looked for, and that any factor which excites or adds major stress or strain is a factor that may cause death in coronary sclerosis. Asked if from the facts in this case he thought exertion or excitement was a contributory cause of death, the doctor replied that he felt definitely that it did.

Dr. Louis J. Gouget testified that it was very likely that the exertion during the fire contributed to the death of Peters, and in his opinion the exertion at the fire resulted in the death of Peters.

In discussing this case upon the foregoing facts, Judge Glenn rendered an opinion from which we quote and adopt the following as the opinion of this court:

"A recent case (*Buckley* v. *Roche*, 214 Cal. 241 [4 Pac. (2d) 929]) very similar by analogy to the instant case was decided by the Supreme Court of this state wherein the widow was claiming the right to a pension by reason of the death of her husband while in the performance of his duty as a policeman of the City and County of San Francisco.

He had a heart affliction for some time prior to his death, which at times had caused him to temporarily retire from active duty. His duties forced him to climb a flight of stairs, and shortly after having climbed the stairs he suffered a heart spasm from which he died within a few hours thereafter. In the course of the opinion the court states: 'The fact that Buckley had at the time a previous heart affliction did not of itself defeat his wife's application for a pension if the exertion in climbing the stairs precipitated his death by aggravating this condition. Under these conditions the injury was such as would bring it within the terms of the charter and entitle his widow to a pension in case of his death from said injury. This principle has frequently been applied in cases arising under the Workmen's Compensation Act (Stats. 1913, p. 279), and we can see no distinguishable difference from such cases and those arising under said charter. The leading case to be found upon this subject is from the Supreme Judicial Court of Massachusetts, where it was held that "Acceleration of previously existing heart disease to a mortal end sooner than otherwise it would have come is an injury within the meaning of the Workmen's Compensation Act." (*In re Brightman*, 220 Mass. 17 [L. R. A. 1916A, 321, 107 N. E. 527].) That case was followed by this court in the decision of the case of *G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, where this court on page 594 [200 Pac. 17, 20] said: "If the disability, although arising from a chronic heart trouble, was brought on by any strain or excitement incident to the employment, the industrial liability still exists. Acceleration or aggravation of a pre-existing disease is an injury in the occupation causing such acceleration." In the Eastman case we also (page 597) quoted with approval the following language from the case of *Re Madden*, 222 Mass. 487 [L. R. A. 1916D, 1000, 111 N. E. 379]) : "It is the hazard of the employment arising upon the particular employee in his condition of health, and not what the hazard would be if acting on a healthy employee. . . . Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it." ' (*Buckley* v. *Roche, supra*.) The case also cites with approval *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712], and *Fogarty* v. *Department of Industrial Relations*, 206 Cal. 102 [273 Pac. 791].

In approving the Knock case the court not only followed the Eastman case, 'but it set aside the order of the Commission denying an award to the dependents of Knock as being contrary to the undisputed evidence in the case'. And in commenting on the Fogarty case it states that the court in that case annulled the order of the commission denying an award in favor of the dependents of Fogarty on the ground that the uncontradicted evidence before the commission showed that the employment of Fogarty precipitated or accelerated his death.

''Respondents herein claim that the Buckley case, *supra,* is not an authority in this proceeding for the reason that there it was stipulated that 'while in said photograph gallery, Buckley suffered a heart spasm from which in a few hours he thereafter died. Said heart spasm resulted from the exertion incident to the stairway ascension.' Thus it is argued that by stipulation it was agreed that the heart spasm resulted from the exertion of climbing the stairway, while in the present proceeding it is claimed by respondents that whether or not Peters suffered a heart spasm as a result of his exertion while fighting the fire is a disputed question; and, furthermore, respondents make the point that even though this be true, still it must appear that Peters was under some extraordinary strain or stress not ordinarily incident to his duties. The further claim is made that the evidence was conflicting, and hence the retirement board properly exercised its discretion, and that according to the charter, its conclusion is final. These questions will be disposed of as I proceed.

██ ''It is the view of this court that there was no substantial evidence opposing that produced by petitioner herein, and hence the case is on a par with the Buckley case, and also if such be the fact, then there was no testimony upon which the retirement board could exercise a discretion. It is true that the autopsy surgeon found that deceased died from coronary sclerosis and his left coronary artery was occluded; but this fact does not conflict with the testimony of the experts given at the hearing. The fact that he had such a heart affliction was the basis for their conclusion that the exertion and stress of fighting the fire was the cause of the heart spasm or collapse of the coronary artery. Respondents take the position that because it appears from the medical testimony that one suffering from such an affliction might

suffer death without any extra exertion, this fact justified the retirement board in concluding that the extra exertion did not accelerate or aggravate the pre-existing heart disease. But in answer to this, as before stated, the only evidence is to the contrary. No medical testimony to the contrary was introduced; and in cases of this character it is imperative to rely upon the testimony of those skilled in the science concerning which they are called upon to express an opinion, and their conclusion is conclusive on the question. Thus in *Simpson Const. Co.* v. *Industrial Acc. Com.*, 74 Cal. App. 239 [240 Pac. 58], it was held that 'whenever the subject under consideration is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive upon the question in issue'. (Cited with approval to the point in *Newton* v. *Industrial Acc. Com.*, 204 Cal. 185 [267 Pac. 542, 60 A. L. R. 1279].) The case of *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 Pac. (2d) 142], is a much stronger case on the facts against the allowance of a claim for an industrial injury than are the undisputed facts in this case, for in that case one of the doctors testified as to his opinion based upon pre-operative symptoms only while other doctors testified from personal observations and examination, and the court held that such testimony by the doctor who had based his opinion only on pre-operative symptoms *did not create a conflict in the evidence.* The order denying compensation was annulled on *certiorari.* The theory, of course, was that the evidence so given was not substantial and hence insufficient to create a conflict. There being no conflict the industrial board has no discretion to exercise, its sole duty being to make an allowance according to the facts. Again, in the case of *Nielsen* v. *Industrial Acc. Com.*, 125 Cal. App. 210 [13 Pac. (2d) 517], although the industrial accident commission denied compensation, the court held that the evidence upon which it acted did not present a substantial conflict. In that case the family physician was present at the autopsy. He testified that the deceased had 'coronary and aortic sclerosis and the aorta was actually dilated, being covered with numerous small hemorrhages and broken capillaries'; also 'that the dilation had ruptured many of these fine blood vessels and that the rupturing *had been very recent.* I am convinced in my own mind that the *heavy lifting caused an increased*

*pressure in the blood stream,* which the degenerated aortic wall could not withstand; this produced an acute dilation and death.' (Court's italics.) The autopsy surgeon at the inquest reported 'arterio-sclerosis, hemorrhages and dilation of the aorta'. It appeared that the family physician had known the deceased for several years immediately prior to his death and that he had never displayed or complained of poor health or illness and that he had not known of anything abnormal in his physical condition. The wife testified substantially to the same effect. On the other hand, another doctor 'without any examination of the deceased and without a full knowledge of the facts found at the autopsy', gave his opinion that death was caused by coronary occlusion, and was not caused by the exertion of the employment. Likewise another doctor, under the same lack of examination and full facts, expressed the same opinion as the doctor last referred to had. Another physician, called by the commission, reviewed the entire record and expressed the opinion that the pre-existing disease was the major factor in the case, but that the extra exertion and the testimony of the physicians who actually saw and performed the autopsy could not be disregarded. The court reviewed the cases on the subject, and annulled the order of the commission. Therefore, notwithstanding the testimony of the two physicians who gave the opinion in that case that death was not caused by the extra exertion of deceased immediately before his death, nevertheless, for the reasons stated, such evidence was insufficient upon which to find that a conflict existed, and the order of the commission as stated, was annulled.

██ "The above cases indicate that there being no substantial evidence to support the conclusion reached by the retirement board, it had no facts upon which to base the conclusion reached, hence it exercised no discretion, and having acted contrary to the undisputed facts its act is treated and considered as arbitrary. In *Hartsock* v. *Merritt,* 94 Cal. App. 431 [271 Pac. 381], the court states: 'The general rule is that *mandamus* does not lie to compel a public official to exercise his discretion in any particular manner, but where the law imposes upon him specific duties and he either whimsically or arbitrarily refuses to perform those duties, or where his refusal to perform is based upon an erroneous conclusion of his legal duties, or where the right

of the individual is so fixed that the refusal of the official act is a clear abuse of discretion, *mandamus* is the proper remedy.' In *Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533 [202 Pac. 874], it was held (syllabus) '*Mandamus* is a proper remedy to compel a reasonable exercise of such discretionary powers as are granted by the act creating the State Water Commission.'' There are many cases where the court has given relief where the action of the board or tribunal has been founded upon unsubstantial testimony which was insufficient upon which to base a finding even though the board or tribunal was vested with discretionary authority. The principle is too well established to require further citations of authorities.

■ ''The final contention made by appellants is that even though it be established that Peters died by reason of exertion of fighting the fire, yet if his duties required the performance of such acts, and they were such as was usual and customary in the line of his duties, no recovery can be had. The cases cited by respondents do not justify such conclusion. If this were the law, then the court erroneously decided the Buckley case, *supra,* as well as most of the other cases referred to above.''

The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 4, 1938.