[L. A. No. 19786. In Bank. Dec. 19, 1946.]

LUMBERMEN'S MUTUAL CASUALTY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOSEPH M. CACOZZA, Respondents.

J. L. Kearney, Herbert S. McCartney and Howard J. Scott for Petitioners.

R. C. McKellips and Edward A. Sarkisian for Respondents.

CARTER, J.—Joseph M. Cacozza, an employee, aged 56 years, was awarded compensation by the Industrial Accident Commission for injuries consisting of partial paralysis of his right side. He returned home from work about 5 o'clock in the afternoon of February 7, 1945, and was apparently in good health when he retired at 10 o'clock that evening. About 4 a. m. he awoke and went to the bathroom. At that time he felt dizzy. He returned to bed and when he was awakened by the alarm clock at 6 o'clock his right side was partially paralyzed, a condition which has continued with only a slight improvement.

The causal connection between the employment and applicant's disability, that is, the question of whether the disability arose out of and occurred in the course of his employment rests upon the following showing: The report of Dr. Daley, the physician who attended and treated Cacozza, states that the latter is suffering with "Arterial Hypertension complicated by Cerebral Apoplexy," and that "Prior to the vascular accident, Mr. Cacozza's work entailed long hours which undoubtedly caused him to become tense and fatigued." In another report Dr. Daley states that Cacozza has arterial hypertension complicated by cerebral "accident" and has a "one sided weakness that goes hand in hand with a vascular accident, (apoplectic stroke)." Dr. Petter also treated Cacozza, and according to his report, he treated him for a stroke of apoplexy which "came on suddenly" on February 8, 1945, and the condition "was brought about by excessive overwork and long hours with no relief." Cacozza testified that he had been in good health and had had no illness prior to the attack except a traumatic injury to his right side

a year previous. About five years before this injury he had obtained a policy of life insurance, and at that time had a physical examination. He smoked very lightly during the two or three years prior to the stroke and drank none. He stated that the long hours he worked (later mentioned) made him more tired than he had been in his work theretofore. The employer's carrier's doctor made a detailed report of his examination of Cacozza and diagnosed the case as: "1) Generalized arteriosclerosis. 2) Cerebro-vascular arteriosclerosis. 3) Arterial Hypertension. 4) Early arteriosclerotic heart disease, with beginning left ventricular enlargement. 5) Cerebral thrombosis with right hemiparesis." And concludes: "this man's generalized and cerebrovascular arteriosclerosis and arterial hypertension have been present for months and probably years. This is based upon the present state of the sclerosis of the palpable and visible arteries. This process in the main is one of degeneration and senescence and is not increased or aggravated by occupation, except where unusual lifting or straining temporarily raises the blood pressure above the usual levels, which places excessive strain upon already weakened arteries and results in a rupture. This phenomenon may occur any place in the body, but usually occurs within the cranial vault or the heart. That is not true in this instance. This man's lesion is a thrombus formation in an already damaged artery within the brain and this formation was facilitated by the decreased blood flow which occurs when the patient is at rest. In this particular instance it came on during the night. His occupation the preceding week, or the preceding month, had no direct influence upon the state of that particular artery or the formation of the clot.

"Therefore, in conclusion, it is my opinion that there is no causal relationship between this man's occupation and his cerebral vascular thrombosis and hemiparesis and, in fact, it might be argued that his active life temporarily inhibited the formation of an intra-vascular clot and this accident occurred in spite of rather than because of his occupation."

Cacozza began working for the employer, Guy F. Atkinson Company, in October, 1944, spending the first month in carpenter work. Thereafter he was the operator of a derrick engaged in loading barges. That work required him to manipulate levers with his hands and feet while seated. He stated that the work was lighter than carpenter work, but he also stated he became more tired from the derrick work because

of the long hours. He testified that he worked 10 to as much as 19 hours per day and his repeated request for relief was denied. The employer's record of Cacozza's employment shows that his hours of work varied from 8 to 20½ per day, most days being over 10 hours. It is true the employer's payroll record contains the statement that it shows the hours of employment but does not reflect the actual hours of work because the employee was on duty but actually working only when loading barges. That does not necessarily mean that he was not loading barges most of the time while on duty. Cacozza testified he "worked" the long hours and he was at least on duty during all the time shown by the record. Nothing more than a conflict is created. The two days before he suffered the stroke he had worked 9 and 10 hours respectively. Most of the time he worked seven days a week. He testified that he had only such time for lunch as it would take to consume it, 15 to 30 minutes.

From the foregoing it is apparent that there is a conflict in the evidence and that conflict has been resolved by the commission in favor of the employee. There is evidence that he was working long hours without relief, an incident of his employment, coupled with the reports of his doctor that his condition was due to that incident of employment. Hence the evidence is sufficient to establish that the injury occurred in the course and arose out of the employment, especially in light of the rule that all reasonable doubts as to whether an injury arose out of the employment are to be resolved in favor of the employee. (*Truck Ins. Exchange* v. *Industrial Acc. Com.*, 27 Cal.2d 813 [167 P.2d 705].)

Where an employee suffers a heart attack brought on by strain and over-exertion incident to his employment the injury or death is compensable, even though the idiopathic condition previously existed, and no traumatic injury is necessary. (*Buckley* v. *Roche*, 214 Cal. 241 [4 P.2d 929]; *Fogarty* v. *Department of Indus. Relations*, 206 Cal. 102 [273 P. 791]; *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 P. 712]; *G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 594 [200 P. 17]; *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 73 Cal.App.2d 555 [166 P.2d 908]; *Naughton* v. *Retirement Board of S. F.*, 43 Cal.App.2d 254 [110 P.2d 714]; *Blankenfeld* v. *Industrial Acc. Com.*, 36 Cal.App.2d 690 [98 P.2d 584]; *Mark* v. *Industrial Acc. Com.*, 29 Cal.App.2d 495 [84 P.2d 1071]; *Peters* v. *Sacramento City E. R.*

*System*, 27 Cal.App.2d 10 [80 P.2d 179]; *McNamara* v. *Industrial Acc. Com.*, 130 Cal.App. 284 [20 P.2d 53]; *Nielsen* v. *Industrial Acc. Com.*, 125 Cal.App. 210 [13 P.2d 517]; *Singlaub* v. *Industrial Acc. Com.*, 87 Cal.App. 324 [262 P. 411]; see cases collected 9 N.C.C.A.,N.S. 335, et seq.; 19 A.L.R. 110; 28 id. 204, 209; 60 id. 1299, 1314.) That it is not required that the exertion or strain be necessarily unusual or other than that occurring in the normal course of the employment is evident. In *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, *supra*, at page 563, the court making a comprehensive review of the authorities in regard to the aggravation of a previous condition caused by the employment states: "The cases do not, and in the nature of things cannot, stand for the proposition that the exertion must be unusual before it is compensable. . . . In such a case whether the strain is a "usual" or an "unusual" one is only one of the facts involved. If there was strain, even though the strain was a strain usual to that type of employment, the injury or death is compensable if there is competent substantial evidence to show the causal connection between that strain and the collapse." In the following cases the injury was held to be employment connected. *Knock* v. *Industrial Acc. Com.*, *supra*, involved an employment requiring the employee to walk over somewhat difficult terrain at an elevation of 3300 feet. (An altitude higher than that to which the employee was accustomed.) A heart attack followed. *Fogarty* v. *Department of Industrial Relations*, *supra*, dealt with an employee who was engaged as a carpenter working on a flume. He worked long hours in repairing a break in a flume under conditions of changing temperature and wet clothes followed by rheumatism and heart attack. *Buckley* v. *Roche*, *supra*, although concerned with pension rights rather than workmen's compensation, applied the rule applicable to the latter field of law and determined that a heart attack following the ascension of stairs by a policeman in the usual course of his duties arose out of his employment, the court stating at page 247: "The climbing of a spiral stairway of twenty-four steps, *even if it were a part of the routine service of Buckley*, according to the stipulation produced the heart spasm which caused his death. The exertion of ascending the stairway, therefore, caused the injury which produced his death. As he was required in the course of his employment to ascend this stairway, the injury caused thereby was

an injury received while in the performance of his duty." [Emphasis added.] (See, similarly, *Dillard* v. *City of Los Angeles,* 20 Cal.2d 599 [127 P.2d 917].) *Mark* v. *Industrial Acc. Com., supra,* dealt with a farm worker who lifted a heavy motor and cranked a truck—he was tired and exhausted. The commission's denial of an award to the employee's dependents was annulled. *Blakefeld* v. *Industrial Accident Commission, supra,* reversed a denial of compensation where a heart attack was suffered after lifting a heavy object although the work called for "doing heavy work including the lifting and moving of heavy objects." A case closely analogous to the one at bar is *Hoage* v. *Royal Indemnity Co.,* 90 F.2d 387 [67 App.D.C. 142] (cert. denied, 302 U. S. 736 [58 S.Ct. 122, 82 L.Ed. 569] and rehearing denied 302 U.S. 778 [58 S.Ct. 270, 82 L.Ed. 602]). There the employee, an adjuster for an insurance company, suffered collapse from angina pectoris, after being required to work long hours. Compensation was allowed. The court quoted from *Commercial Casualty Insurance Co.* v. *Hoage,* 75 F.2d 677 [64 App.D.C. 158]: "It has been held a number of times, and we think correctly, that an accidental injury may occur notwithstanding the injured is then engaged in his usual and ordinary work, and likewise that the injury need not be external." (See to the same effect, *Harbor Marine Contracting Co.* v. *Lowe,* 152 F.2d 845.)

Petitioner argues that there is no evidence of any injury on February 7, 1945, the date found by the commission inasmuch as nothing happened to Cacozza on that day and he worked only 10 hours. That may be true but the evidence does show that the accumulated effects of the overwork ultimately culminated in the disability that manifested itself on February 8, 1945. The injury, the overwork, was developing the disease all during the period of his employment, and February 7, 1945, was the last day of that process which without further work or activity in the employment became disabling the following day.

Petitioner urges that the findings of the commission that Cacozza sustained injury "arising out of and occurring in the course of his employment consisting of cerebral apoplexy" is a mere conclusion of law, hence insufficient and in that connection that the hearing referee's report shows failure to rely upon any medical testimony. The finding is clearly sufficient. The Labor Code provides that the referee shall

report in writing to the commission his findings, and the facts found and conclusions of law shall be separately stated (Lab. Code, § 5313); and that the commission shall make and file "Its findings upon all facts involved in the controversy. (b) Its order, decision, or award stating its determination as to the rights of the parties." (Lab. Code, § 5800.) The findings and conclusions of the commission on questions of fact are conclusive and final, and "Such questions of fact shall include ultimate facts and the findings and conclusions of the commission." (Lab. Code, § 5953.) Finding the ultimate facts is sufficient. Findings on special probative facts are not required. (*Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 P.2d 919]; *Walter* v. *Industrial Acc. Com.*, 209 Cal. 635 [289 P. 627]; *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 P. 654]; *Frankfort General Ins. Co.* v. *Pillsbury*, 173 Cal. 56 [159 P. 150]; *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, 705 [151 P. 398]; *La Fountain* v. *Industrial Acc. Com.*, 13 Cal.App.2d 130 [56 P.2d 257]; *General P. Corp.* v. *Industrial Acc. Com.*, 90 Cal.App. 101 [265 P. 508]; *Clarke* v. *Industrial Acc. Com.*, 87 Cal.App. 766 [262 P. 471]; *Smith* v. *Industrial Acc. Com.*, 26 Cal.App. 560 [147 P. 600].) A finding of the ultimate facts in the words of the statute is sufficient. (See *Western Indemnity Co.* v. *Pillsbury*, *supra; Harlan* v. *Industrial Acc. Com.*, *supra; Walter* v. *Industrial Acc. Com.*, *supra.*) For example, the following are sufficient: A finding that an employee's death or injury was or was not caused by an injury arising out of and occurring in the course of employment. (*Walter* v. *Industrial Acc. Com.*, *supra; Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 12 Cal.App.2d 739 [55 P.2d 1275].) A finding that the employer was guilty of serious and wilful misconduct. (*Ethel D. Co.* v. *Industrial Acc. Com.*, *supra; General P. Corp.* v. *Industrial Acc. Com.*, *supra; Clarke* v. *Industrial Acc. Com.*, *supra; Dawson* v. *Industrial Acc. Com.*, 54 Cal.App.2d 594 [129 P.2d 479]; *Vega Aircraft* v. *Industrial Acc. Com.*, 27 Cal.2d 529 [165 P.2d 665].) The case of *Taylor* v. *Industrial Acc. Com.*, 38 Cal.App.2d 75 [100 P.2d 511], relied upon by petitioner, insofar as it holds that a finding that there was serious and wilful misconduct is insufficient, is out of harmony with the foregoing authorities, and is disapproved.

Criticism is made of the reports of Cacozza's doctors; that no reasons are given for their conclusion, the history of the case is not recited and no basis appears for the

opinion that the injury was brought on by overwork; that hence they are of no probative value. In that connection reference is made to the rule of procedure adopted by the Industrial Accident Commission reading: "The physician's report should include the history of injury, the patient's complaints, the sources of all facts set forth in the history and complaints, that is, whether furnished by the patient or by some other person, the findings on examination, the opinion and reasons for such opinion. Such reasons should be set forth fully and in detail." (Rules of Practice and Procedure of Ind. Acc. Com., rule XI, § 2.) No objection on the above grounds was made by the petitioner to reports of applicant's doctors, and no request or endeavor was made by them to cross-examine the doctors. Cacozza testified that both of those doctors were treating him; they were his attending physicians. The failure to object to the reports on the ground that they did not comply with the commission's rule bars petitioner from now raising that question. Moreover, the rule is phrased in terms making it directory rather than mandatory. While it may express the policy of the commission it does not necessarily preclude it from accepting a report which does not comply with its terms.

The failure of the report to state the reason for the expert opinion does not strip it of probative value to the point where it is not substantial evidence supporting the decision of the commission. It goes to the weight of such evidence, a matter within the exclusive province of the commission as the arbiter of fact. Petitioners had the right to cross-examine the witnesses if they saw fit. But made no such request.

Where an expert witness, such as a medical witness, bases his scientific opinion on his observation, such as an attending or treating physician observing his patient, he need not state the reasons for his opinion—the facts upon which they are based—to render his opinion competent and probative evidence. (*Lemley* v. *Doak Gas Engine Co.*, 40 Cal.App. 146 [180 P. 671]; distinguishing *People* v. *Le Doux,* 155 Cal. 535 [102 P. 517] and *Eisenmayer* v. *Leonardt,* 148 Cal. 596 [84 P. 43]; *Thomason* v. *Hethcock,* 7 Cal.App.2d 634 [46 P.2d 832]; see *Sheehan* v. *Board of Police Commrs.,* 197 Cal. 70 [239 P. 844]; *Hoffman* v. *Southern Pac. Co.,* 101 Cal.App. 218 [281 P. 681]; Wigmore on Evidence [3d ed.], § 675; 136 A.L.R. 965.) Petitioners cite *Winthrop* v. *Industrial Acc. Com.,* 213 Cal. 351 [2 P.2d 142]; *Mark* v. *Industrial Acc.*

*Com.*, 29 Cal.App.2d 495 [84 P.2d 1071], for the proposition that an expert's opinion has no weight unless it is supported by the facts upon which it is predicated. But in those cases the expert was not the attending physician and it affirmatively appeared that the opinion had no basis. In the instant case, the doctors being the attending and treating physicians, it may be assumed they made observations and acquired sufficient facts as a basis for their reports. Petitioners did not avail themselves of the opportunity to cross-examine.

Petitioners contend that they were denied due process of law, relying upon *Morgan* v. *United States*, 298 U.S. 468, 478 [56 S.Ct. 906, 80 L.Ed. 1288], for the proposition that the guarantee of due process requires that the one who determines the facts must consider the evidence and "The one who decides must hear." It is conceded that evidence may be taken by an examiner and sifted and analyzed by subordinates and the adjudicating body may base its determination on such analysis. (See *California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 27 Cal.2d 536 [165 P.2d 669].)

In the instant case the record shows that the hearing referee made a report on August 24, 1945, after the hearing, in which he summarized the evidence. He referred to the treatment of the employee by Drs. Daley and Petter and mentions that time was given to file "further medical reports." On September 24, 1945, after all the medical reports were in, the hearing referee prepared and signed findings of fact and award stating that the injury consisting of cerebral apoplexy occurred in and arose out of the employment. Dated October 4, 1945, are findings and an award purportedly signed by the hearing referee and thereunder appearing "Industrial Accident Commission" and bearing the latter's seal.

It is petitioners' contention that there is no showing that the commission acted upon and considered the case prior to the issuance of the above findings. The seal of the commission indicates a consideration by it. Moreover, there is no showing that the commission did not consider the case and authorize the affixation of its seal. In the absence of such a showing it must be presumed that official duty was performed (Code Civ. Proc., § 1963 (15)) and hence that the commission acted upon and considered the case. (See *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 329 [170 P.2d 18]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 19 Cal.2d

622 [122 P.2d 570, 141 A.L.R. 798].) It is true that the referee in his first report did not summarize the medical reports but they were on file with the commission when he made his suggested findings and when the findings and award were made and were presumably considered by him and the commission. We must so presume on the basis above stated. Petitioners refer to the investigation by a committee of the Legislature of the procedure before the commission and testimony there given indicating that the commission fails to really consider the evidence and cases but acts *pro forma* and perfunctorily. But those circumstances cannot control a specific case nor be a basis to support the serious charge that petitioners were denied due process of law in the instant case. It is true that: "Every finding, order, decision, or award made by any commission or referee, pursuant to such investigation, inquiry or hearing, when approved and confirmed by the commission and order filed in its office, is the finding, order, decision, or award of the commission." (Lab. Code, § 115.) But inasmuch as the seal of the commission was attached it will be presumed the commission approved the findings and award and ordered their filing.

Continuing with their argument with reference to a denial of due process, petitioners attack the denial by the commission of their petition for a rehearing. It is asserted that it was done in a closed session of the commission and the parties were not permitted to appear before it. As a general rule, due process of law does not require that provision for rehearings be made. (See *Pittsburgh, C. C. & St. L. R. Co.* v. *Backus,* 154 U.S. 421 [14 S.Ct. 1114, 38 L.Ed. 1031]; *Board of Education* v. *Mulcahy,* 50 Cal.App.2d 418 [123 P.2d 114].) The statute provides that: "Upon filing of a petition for a rehearing, if the issues raised thereby have theretofore been adequately considered by the commission, it may determine the same by confirming without hearing its previous determination." (Lab. Code, § 5906.) Here the commission denied the rehearing. Although the rehearing referee (different from the hearing referee who heard the case) reviewed the case on the petition for rehearing and recommended granting, the commission had before it the report and findings of the hearing referee and medical reports and chose to let the award stand. There is no obligation on the part of the commission to accept a recommendation of a referee to grant a rehearing,

and the law is satisfied when the commission weighs the hearing referee's report and the record against the rehearing referee's report and denies acceptance of the latter.

The award is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

Traynor, J., did not participate herein.