[Civ. No. 18838. Second Dist., Div. One. June 18, 1952.]

LILLIAN E. GILMAN, Respondent, v. CITY OF LONG BEACH et al., Appellants.

748

Irving M. Smith, City Attorney, and Clifford E. Hays, Deputy City Attorney, for Appellants.

Kenneth Sperry for Respondent.

DORAN, J.—The petition herein prays for a peremptory writ of mandate to compel the defendants to grant and pay a widow's pension under the provisions of section 187(4) of the charter of the city of Long Beach. Petitioner is the widow of Vertle P. Gilman who died on April 13, 1949. Mr. Gilman became a member of the Long Beach Fire Department on October 1, 1932, and continued in active service until April 2, 1949, at which time he became unable to continue his duties by reason of a heart affliction. Appellants' answer denies that decedent was eligible for retirement pension as a result of injuries received in or sickness caused by the discharge of decedent's duties, and denies that respondent was entitled to a pension.

A jury answered special interrogatories in favor of respondent, to the effect that Mr. Gilman died as a result of injury received during the performance of duties as a member of the fire department, and that such services "so aggravated a pre-existing injury or sickness . . . as to render him physically unable to perform the duties of his position from and after April 2, 1949." Judgment was entered ordering appellants to grant respondent a widow's pension and to pay the amount prescribed by the charter. It is contended by appel-

lants that there is no substantial evidence in the record to support the jury's findings, and that the judgment granting respondent a widow's pension is contrary to law.

The record discloses evidence that the decedent Gilman was in good health when appointed to the fire department in 1932; that during the period from 1934 to 1939 Gilman, assigned to the harbor area, was called upon to fight fires in the holds of ships, which service involved strenuous exertion and exposure to smoke. In fighting a factory fire decedent was exposed to ammonia fumes. From March, 1942, to July, 1943, decedent was required to fight numerous grass fires and fires at the city dump; the men were obliged to work short-handed and Gilman was observed to become exhausted and short of breath, one of the first signs of heart trouble. At about this time Gilman was examined for promotion and turned down because of high blood pressure and "essential hypertension."

In December, 1945, decedent was called upon to fight a Long Beach fire for two or three days involving strenuous exertion and creosote smoke and fumes. In January, 1947, decedent was promoted to the position of captain, and appeared to worry over the added responsibilities of the office. About this time Mr. Gilman commenced to complain of an upset stomach, said to be a symptom of advanced coronary sclerosis. There was some difficulty in sleeping; decedent appeared to lose weight and became increasingly nervous. There was medical testimony that decedent's life was materially shortened by the stresses and strains of employment, and that decedent's heart disease was caused by such activity and its progress accelerated thereby.

It is apparent from the above and other evidence contained in the record that there is substantial evidence in support of the jury's findings and the judgment entered thereon. The appellant criticizes this evidence as merely showing that "the employee might have lived longer had he not been working and had lived under the idealistic conditions prescribed by the doctor and had he been free from the stresses and strains of modern living."

As pointed out in respondent's brief, the parties "agreed to the factual issues to be submitted to the jury." Question No. 4 asked the jury to determine whether "*any* services performed by Vertle P. Gilman, while working as a member of the Fire Department . . . so aggravated a pre-existing injury or sickness, if any, as to render him physically unable to perform the duties of his position from and after April 2,

1949." (Italics added.) As hereinbefore indicated, this inquiry was answered in the affirmative, and is supported by substantial evidence. In the present state of the record, and under the usual rule governing appellate review, the determination of such questions of fact, cannot be now disturbed.

In dealing with the same pension provisions involved herein, section 187(4) of the Long Beach city charter, the reviewing court in *Wood* v. *Board of Police & Fire Pension Commrs. of the City of Long Beach,* 49 Cal.App.2d 52 [120 P.2d 898], said: "Subdivision 4 provides in plain language for the payment of a pension to the dependents of a policeman whose death occurred (a) as a result of a service-connected injury; or (b) as a result of a service-connected illness; or (c) after retirement; or (d) while eligible to retirement. Each of these contingencies establishes a separate and distinct classification of dependents entitled to receive a pension."

A similar provision, found in section 183 of the Los Angeles city charter, has received broad interpretation in *Cordell* v. *City of Los Angeles,* 67 Cal.App.2d 257 [154 P.2d 31], and in *Bradley* v. *City of Los Angeles,* 55 Cal.App.2d 592 [131 P.2d 391]. In the Cordell case the words "shall die as a result of any injury received during the performance of his duty," are held to mean "that a causal relation, mediate or immediate, must be shown between the duty performed by the decedent and the immediate cause of his death," quoting from *Lawrence* v. *City of Los Angeles,* 53 Cal.App.2d 6 [127 P.2d 931].

In the Bradley case, just cited, it is said: "The word 'injury' as used . . . is not limited . . . to injuries caused by external violence, physical force or as a result of accident . . . but it is given a much broader and more liberal meaning. So construed it includes any injury or disease arising out of and ·in the course of the employment, which causes incapacity or death. . . . Such legislation should be applied fairly and broadly with a view to confer the benefits intended." Although it is true, as noted by appellant, that the facts in these cases differed materially from those here involved, the principles of interpretation there enunciated are well applicable to the ·present controversy.

■ Appellants also complain of the giving of an instruction that the term "injury," includes "the acceleration or aggravation of a pre-existing disease to the extent that it becomes disabling or brings about death sooner than it otherwise would have occurred." As noted in respondent's brief,

however, "This portion of the instruction is almost a direct quotation from the language . . . in the cases of *Buckley* v. *Roche*, 214 Cal. 241 [4 P.2d 929] . . . and *Dillard* v. *City of Los Angeles*, 20 Cal.2d 599 [127 P.2d 917]." In both of these cases it was held that "The fact that a police officer had at the time of the injury a previous heart affliction does not of itself defeat his dependents' right to a pension if the injury precipitated his death by aggravating the heart condition."

No reversible error has been pointed out; there is no merit in any of the appellant's contentions, and the findings of the jury resulting in the judgment compelling appellants to grant Mrs. Gilman a widow's pension, are supported by the evidence.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied July 14, 1952, and appellants' petition for a hearing by the Supreme Court was denied August 14, 1952.