[Civ. No. 18931.   Second Dist., Div. Three.   Nov. 7, 1952.]

CATHERINE G. WIGHT, Respondent, v. CITY OF LONG BEACH et al., Appellants.

Irving M. Smith, City Attorney (Long Beach), and Clifford E. Hayes, Deputy City Attorney, for Appellants.

Kenneth Sperry for Respondent.

SHINN, P. J.—The city of Long Beach and certain of its officers appeal from a judgment based upon findings of a jury upon special interrogatories. The action was in mandate to compel the city and its officers to grant a pension to petitioner, widow of a police officer of the city. The jury answered affirmatively the questions (1) whether Mr. Wight received any injury or contracted any sickness as a result of the discharge of his duties as a member of the police department, (2) whether he died as a result of such injury or sickness, and (3) whether his services as a member of the department so aggravated a preexisting injury or sickness, if any, as to accelerate such ailment and precipitate his death.

It is undisputed that the cause of death was disease of the heart from which Mr. Wright had suffered for a number of years. It is not questioned by appellants that there was substantial evidence that performance of the duties of his employment aggravated the ailment and precipitated his death. It is contended, however, that this is not sufficient to establish a right to a pension for the reason that Mr. Wight performed only the normal duties of his employment.

The principal ground of the appeal is stated as follows: "The appellants contend that the performance of the ordinary and usual duties required of an employee do not constitute an injury, unless some hazard or some unusual strain accelerates and precipitates the death of the employee." They say further: "Work in and of itself does not constitute an industrial injury," that death is not due to the discharge of duties of a member of the police department unless it results from overexertion or from unusual duties. All the extensive arguments are founded upon this erroneous theory. Appellants do not recognize the distinction between the right to compensation which is dependent upon proof of some accidental injury and the right to compensation for service connected aggravation and acceleration of illness. Subdivision 4 of section 187 of the Long Beach City Charter provides a pension for dependents of policemen whose death occurs (a) as a result of a service connected injury, or (b) as a result of a service connected illness. These provisions were considered in *Wood* v. *Board of P. & F. Pension Commrs.*, 49 Cal.App.2d 52 [120 P.2d 898], and *Gilman* v. *City of Long Beach*, 111 Cal.App.2d 747 [245 P.2d 512], the latter case involving the pension of a fireman's widow.

The arguments advanced by the appellants here are identical with those presented in the Gilman case, and the same authori-

ties are relied upon. Gilman suffered from a heart condition which the jury found, in answer to special interrogatories, was so aggravated by the discharge of his duties as a fireman as to cause his death. The court said: ''There was medical testimony that defendant's life was materially shortened by the stresses and strains of employment, and that decedent's heart disease was caused by such activity and its progress accelerated thereby.'' The judgment which awarded the widow a pension was affirmed. There was evidence of the same tenor in the present case. At the time he was appointed as a patrolman December 1, 1927, Mr. Wight passed a rigorous physical examination. During most of his service he was assigned to night duty, and he worked as supervisor and on patrol between midnight and 8 a. m.; he would come home very tense, and during the past two years of his life was unable to sleep more than 4 hours out of 24; he discovered that he had a heart condition in 1946; following exertion he had a pain in his chest which ran into the shoulder and left arm; he was given treatment, and there was medical testimony to the effect that exertion or stress would definitely increase the frequency and severity in his attacks, and that the lives of persons in such condition are shortened by exertion, emotional stresses and conflicts. Mr. Wight was advised to cut down on his activities; it appears that he did not do so, but undertook increased responsibilities after he was promoted to lieutenant. His health appeared to fail during the last year or two of his life. He had the responsibility of preparing the budget of the department which occupied him for two or three months. In February and March while he was working on the budget his face would get pale and his eyes would take on a rather dazed look. While he was working on the budget in February and March he continually brought his work home and he and Mrs. Wight worked on it at night until 1 o'clock and once until 4 o'clock in the morning. In March, 1949, he was assigned to break up some slot machines; these weighed over 100 pounds; there were eight of them and he would pick them up and drop them, and use a sledge hammer on them; he complained of pain, but continued with his work of prying the machines apart; while handling the supplies of the department he often lifted heavy boxes of ammunition and other boxes, with the result that he was subjected to pain and shortness of breath; he frequently negotiated a flight of stairs to and from the stockroom in the basement, an exertion that was detrimental

to his condition. After a sleepless night he came to work complaining of pain and on the day preceding his death he had gone downstairs to the storeroom in the basement on several occasions. There was evidence that after performing other services he would be seen to be perspiring heavily, short of breath and extremely pale, and he complained of being extremely tired and of a pressure on his chest. In June, 1949, he was apparently suffering from a chest pain and was induced to sit quiet for about an hour and rest. He was very pale on that occasion. When he went home after a day's work he would lie down on the davenport and rest until dinner time. There was medical testimony, in response to questions describing some of Mr. Wight's activities, that they certainly would have a detrimental effect on his heart, and that there was a causal connection between his death and the exertion to which he was subjected on the preceding day, which, according to the evidence, had left him in an exhausted condition. There was other medical testimony in response to questions incorporating evidence as to Mr. Wight's appearance after he had used a sledge hammer to break up slot machines. The opinion was expressed that he suffered from a blood clot. In answer to a further hypothetical question incorporating evidence of Mr. Wight's activities and condition on the day preceding his death, a physician testified to the opinion that "the exertion contributed to the episode which terminated fatally." There was a vast amount of explanation given by the physicians on direct and on cross-examination as to the manifestations and progress of diseases of the heart. The expert witnesses for plaintiff held to the opinion that Mr. Wight died from a coronary artery disease and his death was materially hastened by the nature and extent of the services he rendered as a member of the police department. Physicians called by the defendants expressed opinions that Mr. Wight's heart condition would have progressed had he not been working at all, and that his services as a policeman did not cause his condition to develop, or contribute to his death.

There was substantial medical testimony to justify the finding of the jury that the services of Mr. Wight aggravated his illness and precipitated his death. Moreover, the testimony of friends and associates as to their observations of the effects of Mr. Wight's work upon his condition, considered with the expert testimony as to the detrimental effect of strenuous effort, strain and worry upon one suffering from such a condition, furnished a logical basis for the finding.

The principle is thoroughly established that injury or death is compensable if it is due to services in the normal course of the employment, even though there be no evidence of unusual exertion or strain. The argument of appellants that there was no evidence of any extraordinary or unusual effort which was the immediate cause of Mr. Wight's death evades this controlling principle. It is sufficient on this point to cite *Lubermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 492 [175 P.2d 823], where the rule is stated, supported by many authorities.

The final point of appellants is that the court committed error in giving instructions which stated the law as we have stated it. There was no error. The same instructions were approved in the Gilman case.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.