[Civ. No. 25197. Second Dist., Div. Three. Dec. 22, 1961.]

FRANKLIN S. FLAHERTY, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE LOS ANGELES
COUNTY EMPLOYEES RETIREMENT ASSOCIA-
TION et al., Defendants and Respondents.

Jordan, Dodge, Kemble & Loveridge and Paul F. Loveridge for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Defendants and Respondents.

Henry A. Dietz, County Counsel (San Diego), and Joseph Kase, Jr., Deputy County Counsel, as Amici Curiae on behalf of Defendants and Respondents.

FORD, J.—The plaintiff, who had been employed by the East Los Angeles Fire Protection District, sought to compel the Board of Retirement of the Los Angeles County Employees Retirement Association to pay him a pension on the basis that he had become permanently incapacitated for the performance of duty as a result of injury arising out of and in the course of his employment. The board of retirement had determined that he should be "retired as a safety member under an unmodified nonservice-connected disability retirement allowance, effective November 5, 1958." A writ of mandate was denied. The plaintiff has appealed.[1]

At the time of the determination made by the board, the plaintiff was a "safety member"[2] of the Los Angeles County Employees Retirement Association under the provisions of the County Employees Retirement Law of 1937. (Gov. Code, § 31450 et seq.) During his employment as a fireman, the plaintiff was directed to participate in physical activities while on duty, including the playing of games such as volley

---

[1] In his petition, the petitioner alleges in part: "Plaintiff is presently receiving $201.06 per month under the nonservice-connected retirement granted by the Board, but as a service-connected disability retirement plaintiff would be entitled to receive $301.54 per month and would be entitled to other and superior benefits for his surviving spouse upon his decease."

[2] Section 31469.3 of the Government Code is in part as follows: " 'Safety member' means . . . : . . . (b) Any person employed by . . . a district . . . whose principal duties consist of . . . active fire suppression. . . ."

ball. He claimed that his disability was due to an injury suffered by him during such a game on July 27, 1957.

At its meeting on November 5, 1958, the board of retirement had before it Captain Flaherty's application for disability retirement and written statements from physicians and surgeons who had attended or examined him, including statements addressed to the State Compensation Insurance Fund. The board heard the testimony of Gerald A. Heidbreder, M.D., its adviser on medical matters (see Gov. Code, § 31530), but no phonographic record was made of the testimony. However, the board had before it the letter of Dr. Heidbreder of November 3, 1958, in which, after reviewing written statements of some of the other medical doctors, he stated in part as follows: "The applicant is permanently disabled for performance of his duties as a fire captain in the Fire Department as a result of chondromalacia, left femur, discoid left medial semilunar cartilage with hypertrophy of the fat pad of the left knee. Therefore, disability retirement is recommended. Service connection, in the opinion of the writer, has not been established." The application for a service-connected disability retirement allowance was denied without prejudice by the board.

On or about December 3, 1958, Chief Engineer K. E. Klinger of the Los Angeles County Fire Department requested the board to reconsider its action of November 5, 1958. Thereupon the board ordered that an examination of Captain Flaherty be made by an orthopedic surgeon. Pursuant thereto, such an examination was made by C. W. Lambert, M.D. At its meeting on May 6, 1959, the board had before it additional written statements of physicians and surgeons. That of Stanley S. Haft, M.D., stated: "Please note that Mr. Flaherty was disabled as the result of an industrial injury which occurred on 7-27-57." In Dr. Lambert's report, based upon the examination of Captain Flaherty and the history related by him as well as upon a study of the record of the surgical procedure carried out on the left knee by Dr. Haft, the opinion was expressed that Captain Flaherty's disability was "due to a non-industrial injury." Dr. Heidbreder testified again but no phonographic record was made of his testimony. His letter of April 10, 1959, which was before the board, contained the statement that Dr. Lambert's report substantiated Dr. Heidbreder's opinion previously expressed that "service-connection had not been established." On May 6, 1959, the board again denied without prejudice the request for retirement because of service-connected disability.

On November 16, 1959, in a proceeding entitled *Franklin S. Flaherty, Applicant,* v. *East Los Angeles Fire Protection District, and State Compensation Insurance Fund, Defendants,* the Industrial Accident Commission made findings of fact and rendered an award in favor of Captain Flaherty. One of such findings was that "Franklin S. Flaherty, . . . while employed as a fire captain on July 27, 1957, . . . by East Los Angeles Fire Protection District, sustained injury arising out of and occurring in the course of the employment, to both knees, more specifically, to the left knee." A further finding was that such injury caused permanent disability. By a letter dated December 1, 1959, Captain Flaherty requested that the board reconsider his application. At its meeting on January 6, 1960, in addition to the documents theretofore before it, the board had a copy of the findings and award of the Industrial Accident Commission. Dr. Heidbreder testified but again no phonographic record was made of his testimony. However, his letter of January 5, 1960, was in the record. After stating that he had "re-reviewed" the entire file, Dr. Heidbreder wrote: "It is still the considered opinion of this reviewer that the applicant is permanently disabled for the performance of his duties as a fire captain in the Fire Department as a result of a chondromalacia of the left femur and that a non-service-connected disability retirement recommendation is reaffirmed. It is still the further considered opinion of this reviewer that service-connection has not been established." The application for retirement because of service-connected disability was again denied without prejudice. Thereafter the petition of the appellant was filed in the superior court.

The first contention of the appellant is that the findings of fact of the Industrial Accident Commission, to which reference has been made, are res judicata. In the consideration of this question, it is to be noted that each determination of the board of retirement was stated to be without prejudice to the renewal of the application and hence was not a final determination. (See *Wilkins* v. *Wilkins,* 95 Cal.App.2d 611, 613 [213 P.2d 752].) In support of his position, the appellant places reliance on *French* v. *Rishell,* 40 Cal.2d 477 [254 P.2d 26], in which it was held that a finding of fact made by the Industrial Accident Commission that the death of a captain of the Oakland Fire Department proximately resulted from an injury occurring in the course of and arising out of his employment was res judicata with respect to his widow's claim of a right to receive a pension payable out of

the Firemen's Relief and Pension Fund of the City of Oakland. The answer admitted that the city had failed to seek any review of the commission's award which had become final.

The Supreme Court said at page 479: "The doctrine of res judicata is applicable where the identical issue was decided in a prior case by a final judgment on the merits and the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." In applying the doctrine to the case before it, the court stated (40 Cal. 2d, at p. 482): "It is immaterial that the pension board was not a party to the Industrial Accident Commission proceeding. The city, which is not only a party herein but the real party in interest, was also a party to and appeared in the prior proceeding. Under the city charter, the pension board acts as an agent of the city, and, in this representative capacity, it is bound by the commission's decision if the city is bound."

While in the *French* case the City of Oakland was a party in both proceedings, in the present case the East Los Angeles Fire Protection District was a party to the proceeding before the commission and the Los Angeles County Employees Retirement Association was not. In the retirement proceeding, the party against whom the claim of Captain Flaherty was asserted was the association. Therefore, in determining the applicability of the doctrine of res judicata, it is necessary to consider the respective natures of the district and the association and the relation of each to the other.

The East Los Angeles Fire Protection District is not a department or agency of the County of Los Angeles but is a separate entity formed under state law. (See *Johnson* v. *Fontana County Fire Protection Dist.*, 15 Cal.2d 380, 387-388 [101 P.2d 1092]; *Firestone Tire & Rubber Co.* v. *Board of Supervisors*, 166 Cal.App.2d 519, 529 [333 P.2d 378]; *cf. Orinda-County Fire Protection Dist.* v. *Frederickson & Watson Co.*, 174 Cal.App.2d 589 [344 P.2d 873]; *Moore* v. *Municipal Court*, 170 Cal.App.2d 548, 554 [339 P.2d 196].) Its employees are not *ipso facto* employees of the county. (Health & Saf. Code, § 14451.)

The Los Angeles County Employees Retirement Association exists pursuant to the provisions of the County Employees Retirement Law of 1937. (Gov. Code, § 31450 et seq.) The benefits of the retirement law are obtained by membership in the retirement association. (*McNeil* v. *Board of Retirement*, 51 Cal.2d 278, 281 [332 P.2d 281]; see Gov. Code, § 31474.) Under section 31557 of the Government Code,

such membership is obtained for officers and employees of a district of which the board of supervisors is the governing body as a result of the adoption by such body of a resolution by a four-fifths vote providing for the inclusion of the district in the retirement association, and for officers and employees of a district of which the board of supervisors is not the governing body as a result of the adoption by the governing body of such a resolution by a two-thirds vote (and, since the 1957 amendment, the consent of the board of retirement to such inclusion). The management of the retirement system in the present case is vested in the board of retirement, consisting of seven members and one alternate, one of such members being the county treasurer. The second and third members are members of the association, other than safety members, elected by such members. The fourth, fifth and sixth members are qualified electors of the county who are not connected with the county government in any capacity and are appointed by the board of supervisors.[3] The seventh member is a safety member of the association elected by the safety members. Provision is also made for the alternate member. (Gov. Code, § 31520.1.) The legislation provides for contribution by the county to the retirement fund.[4] With respect to districts, sec-

---

[3] Under the applicable code section, however, one of such appointees may be a supervisor.

[4] Section 31581 of the Government Code is as follows: "After the date a system becomes operative the board of supervisors shall, in the preparation and adoption of the county budget, add to the appropriation for salaries and wages and include therein an appropriation determined pursuant to Sections 31453 and 31454. Until such determination the additional appropriations shall equal 23.77 percent of the total compensation provided for all safety members covered by Article 7.5 and 8.85 percent of the total compensation provided for all other employees who are members of the retirement association."

Section 31453 provides: "An actuarial valuation shall be made within one year after the date on which any system established under this chapter becomes effective, and thereafter at not to exceed five year intervals. The valuation shall be conducted under the supervision of an actuary and shall cover the mortality, service, and compensation experience of the members and beneficiaries, and shall evaluate the assets and liabilities of the retirement fund. Upon the basis of the investigation, valuation, and recommendation of the actuary, the board of retirement shall recommend to the board of supervisors such changes in the rate of interest, in the rates of contributions of members, and in county and district appropriations as are necessary. No adjustment shall be included in the new rates for time prior to the effective date of the revision."

Section 31454 provides: "The board of supervisors shall immediately adjust the rate of interest, the rates of contributions of members, and county and district appropriations in accordance with the recommendations of the board of retirement, but shall not fix them in such amounts as to reduce the individual benefits provided in this chapter."

tion 31585 of the Government Code provides: "When any district becomes a part of the retirement system, the same appropriations and transfers of funds shall be made as those required of the county in this article, and such charges are legal charges against the funds of the district."[5]

The "retirement association" is an association of all persons who may qualify as annuitants or beneficiaries pursuant to the terms of the County Employees Retirement Law of 1937. (Gov. Code, § 31474.) It is an organization distinct from either the County of Los Angeles or the East Los Angeles Fire Protection District. There is a clear distinction between a situation of such a nature and that presented in *French* v. *Rishell, supra,* 40 Cal.2d 477, wherein the city was the employer and had its own retirement system.

A similar problem was presented in *County of Los Angeles* v. *Continental Development Corp.,* 113 Cal.App.2d 207 [248 P.2d 157], an action wherein the county sought to recover

Section 31454.5 is as follows: "In any county subject to the provisions of Section 31676.1 or Section 31695.1 the board of supervisors may, by vote entered in the minutes of the board, make an additional appropriation sufficient to fund over a period of 30 years any deficit which may result to the system because of the adoption of Section 31676.1 or Section 31695.1 or by the adoption of Articles 6.8, 7.5 and 8.7. The board of supervisors may make such additional appropriation whether recommended by the board or not."

[5]Section 31454.6 of the Government Code is as follows: "Whenever, in any county subject to the provisions of Section 31676.1 the board of supervisors makes any additional appropriations pursuant to Section 31454.5, the governing body of every district, including the board of supervisors where it is the governing body, also shall make an additional appropriation in the amount to which it has agreed, otherwise in the same proportion as the total pay roll deductions from the salaries of all members employed by such district for the latest pay roll period bear to the total pay roll deductions from the salaries of all members employed by the county for the same pay roll period."

Section 31564.5 provides: "Whenever the governing body of a district for which the board of supervisors is not the governing body adopts a resolution for the inclusion of such district in the retirement association, if, in the opinion of the board because of conditions peculiar to such district the contributions required from such district by this chapter are insufficient to pay the same proportion of the costs of the system as will be paid by the county, the board may require that such district contract with the board to appropriate additional sums. If, because of conditions peculiar to such district the contributions required from such district by this chapter are greater than necessary to pay the same proportion of the costs of the system as will be paid by the county, the board and such district may contract for lesser sums. Either of such contracts may provide, among other things, that whenever the board of supervisors makes an additional appropriation pursuant to Section 31454.5, the district also will make an additional appropriation calculated by a formula specified in such contract. All such districts are hereby authorized to enter into and perform such contracts."

certain taxes. It was contended by the defendant that judgments in other actions to which the Los Angeles County Flood Control District had been a party were binding upon the county under the doctrine of res judicata. In rejecting that contention the appellate court, adopting the language of the trial judge, stated (113 Cal.App.2d, at pp. 219-220) : " '. . . it is clear that the same result must follow if we apply the third test mentioned in the *Bernhard* case [*Bernhard* v. *Bank of America,* 19 Cal.2d 807 (122 P.2d 892)], namely, identity of parties. Inasmuch as the county of Los Angeles was not a party to either of the prior proceedings, it would appear, upon their face, that they are not binding upon the plaintiff in these actions. Counsel for defendant, however, contends that the county of Los Angeles must nonetheless be considered as a party to the prior proceedings by reason of the fact that the Board of Supervisors of the County of Los Angeles constitute, ex officio, the board of directors of the flood control district which authorized the filing of both prior actions. The fact remains, however, that the Los Angeles County Flood Control Act expressly declares the district to be a body corporate and politic, vested with the powers and duties therein set forth. It is thus a distinct legal entity, notwithstanding the fact that it comprehends a greater portion of the territory embraced within the county of Los Angeles, and is governed by a board which comprises the same individuals which constitute the Board of Supervisors of Los Angeles County. The latter is a mere fortuitous circumstance. If the Flood Control Act provided for a governing body composed of persons other than the members of the board of supervisors, no one would have the hardihood to suggest that it did not constitute a separate and distinct entity from the county of Los Angeles, and it does not cease to be such merely because the Legislature saw fit to provide that the governing board thereof should consist of the same persons who constitute the Board of Supervisors of Los Angeles County.''

The association had no standing to appear in the proceeding before the Industrial Accident Commission and there contest the claim that there was a causal relation between Captain Flaherty's participation in the volleyball game and his permanent disability. In rejecting a similar contention that the doctrine of res judicata was applicable with respect to an award in a proceeding to obtain workmen's compensation, it was said in *Mutual Benefit Health & Accident Assn.* v. *Neale,*

43 Ariz. 532 [33 P.2d 604], at page 610 [33 P.2d] : "As a matter of common law, it has long been the rule that a judgment in personam against any person who is a stranger to the cause, is evidence only of the fact of its own rendition, and may not be introduced to establish the facts upon which it has been rendered. [Citations.] And the test of whether a person is a stranger is whether he was interested in the subject-matter of the proceeding, with the right to make defense, to adduce testimony, to cross-examine the witness on the opposite side, to control in some degree the proceeding, and to appeal from the judgment. [Citations.]" No basis exists in the present case for a claim that the findings of fact of the commission are binding upon the association under the doctrine of res judicata. (See *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 811 [122 P.2d 892] ; cf. *Dillard* v. *McKnight,* 34 Cal.2d 209, 214-215 [209 P.2d 387, 11 A.L.R.2d 835].)[6]

█ The appellant argues that in any event he was entitled to a trial de novo in the superior court under the reasoning of *French* v. *Cook,* 173 Cal. 126 [160 P. 411]. In that case the widow of a police officer sought a monthly pension on the theory that the death of the officer was caused by an injury received while in the performance of his work. The Supreme Court noted that the city charter made "no provision whatever as to any hearing or finding by the board." (173 Cal., at p. 127.) The court stated at page 129 : "We are unable to see in the charter provisions bearing on the matter anything which can fairly be held to make the board in relation to such an application as this a tribunal possessing judicial powers whose decision on questions of fact is at all binding. . . . There is absolutely nothing in the charter purporting to confide to the board the power to finally determine any question of fact in connection with such a pension. The board is apparently in the same position with relation to such a matter as is any officer required by law to do a prescribed act in a certain contingency, where no special method is provided by law for the ascertainment of the facts."

---

[6]Placing their principal reliance on *DeCelle* v. *City of Alameda,* 186 Cal.App.2d 574 [9 Cal.Rptr. 549], the respondents argue that as a matter of law the commission's determination was not a final adjudication, although it was stipulated at the trial that counsel for Captain Flaherty "may be deemed to have made a motion [for judgment] on the pleadings on the ground that the judgment of the Industrial Accident Commission is final." It is not necessary to discuss such contention in this opinion because of the conclusion reached that the doctrine of res judicata is not applicable in the present case.

While the County Employees Retirement Law of 1937 does not embody elaborate provisions with respect to hearings by the board, it is manifest that it was the intention of the Legislature to place upon the board the duty of determining the fact upon which its action is to be based. Retirement because of disability is the subject of article 10 (Gov. Code, §§ 31720-31739.3) and included therein is the matter of permanent incapacity for the performance of duty as a result of injury or disease arising out of and in the course of employment. Section 31723 provides that the board may require such proof, including a medical examination at the claimant's expense, as it deems necessary or the board upon its own motion may order a medical examination to determine the existence of the disability. Section 31724 is in part as follows: "If the proof received, including any medical examination, shows to the satisfaction of the board that the member is permanently incapacitated physically or mentally for the performance of his duties in the service, it shall forthwith retire him for disability. . . ." In section 31725, it is stated: "Permanent incapacity for the performance of duty shall in all cases be determined by the board." The determination of whether permanent incapacity has resulted from injury or disease arising out of and in the course of employment must often be based upon conflicting evidence of lay or medical witnesses and upon the inferences to be drawn from such evidence. It appears to have been the legislative intent that the board should receive such evidence and weigh it and, if the required causal relationship between the disability and an injury arising out of and in the course of duty is found, grant the proper retirement benefits. (*Cf. Newbrand* v. *City of Yonkers*, 285 N. Y. 164 [33 N.E.2d 75, 81].)

The conclusion that with respect to the question of fact presented by Captain Flaherty's application the board was empowered to exercise a quasi-judicial function is fortified by a consideration of *Odden* v. *County Foresters etc. Board*, 108 Cal.App.2d 48 [238 P.2d 23], wherein a member of a county fire service retirement system claimed that he was incapacitated by "service connected disability" for the performance of his duty as a county fireman as a result of heart trouble occurring in the course of and arising out of his employment. In that case the fireman relied on section 32353 of the Government Code in which it was stated that if a member who had served 15 years or more developed heart trouble, it should be presumed, in the absence of evidence to the contrary, "in

any proceeding under this chapter *by the board and by the court,* that such heart trouble is an injury or disease occurring in and arising out of his employment." (Emphasis added.) A similar presumption is embodied in section 31720.5 which is part of article 10 of the County Employees Retirement Law of 1937; therein it is also stated that the presumption shall govern both "the board and the court." (See *Robinson* v. *Board of Retirement,* 140 Cal.App.2d 115, 116 [294 P.2d 724].) ██ In the *Odden* case the court said (108 Cal. App.2d, at p. 49) : "On an application for a writ of mandate to review an order of a local quasi-judicial body such as the board in the present case the trial court does not have a right to judge of the intrinsic value of evidence nor to weigh it. The power of the court is confined to determining whether there was substantial evidence before the board to support its findings." (See also *Damiani* v. *Albert,* 48 Cal.2d 15, 17 [306 P.2d 780].) It is manifest that it would be unreasonable to conclude that the board performs a quasi-judicial function when passing upon an application for disability due to heart trouble which is claimed to be service-connected, but not where the basis of the application is of the nature of that involved in the present case. Moreover, while the reference in sections 31720.5 and 32353 to the consideration of the presumption by the court may have been superfluous, the reasonable interpretation appears to be that the reference is made with respect to the review by the court of the proceedings theretofore had before the board. (*Cf. Robinson* v. *Board of Retirement, supra,* 140 Cal.App.2d 115.)

██ "The rule in California is that upon review of the decision of a local administrative body, the reviewing court is concerned only with the presence or absence of substantial evidence in the agency record which will support the agency's determination. ██ The reviewing court may not consider evidence which was not presented to the local board; there is to be no trial de novo with respect to matters upon which the agency was authorized to and did in fact decide." (*Jenner* v. *City Council,* 164 Cal.App.2d 490, at pp. 499-500 [331 P.2d 176].)

██ The appellant asserts that even if its contentions heretofore discussed are rejected, the trial court was in error in upholding the action of the board inasmuch as the determination of the board was arbitrary and constituted an abuse of discretion. It is argued that "there is nothing in the record to indicate that the Board of Retirement conducts itself as a

*quasi* judicial body.'' The appellant states that there is nothing in the record to indicate that evidence was ever taken or that any witness was ever sworn; no phonographic record was made of any testimony of Dr. Heidbreder. Reference is made to the minutes of the meetings of the board. The assertion is made that the record presented ''reveals no trial at all much less a fair trial.'' It is further stated as follows: ''Appellant never had knowledge of any evidence introduced and he never had any effective right to cross-examine for the reason that he was never present at anytime before the Board of Retirement nor was he represented by counsel.''

In considering the appellant's contention, it is to be noted that he does not claim lack of notice of any hearing or that he was prevented from attending any meeting or from being represented by counsel, except as a claim of such a nature is embodied in a stipulation of the parties made in the superior court. That stipulation is set forth in the footnote of this opinion.[7] ▇ It is, of course, the law that if there is a lack of notice of a hearing or an absence of opportunity to appear before a board such as the retirement board in support of an application, such defect constitutes a want of procedural due process. (*Robinson* v. *Board of Retirement, supra,* 140 Cal.App.2d 115, 118.)

▇ With respect to the proceedings before the board on November 5, 1958, there was no showing of a lack of notice to Captain Flaherty or of an absence of opportunity for him to appear in person or by counsel. He did not testify in the

---

[7] ''It is hereby stipulated between the parties, without any concession as to the materiality thereof, that one Herman H. Fisher, from January 1, 1957, and at all times thereafter, was and now is an employee of a County Fire Protection District, that the said Herman H. Fisher, between January 1, 1957, and May 1959, was and ever since September 1, 1959, was and now is, an alternate member of the Board of Retirement of the Los Angeles County Employees Retirement Association, pursuant to Section 31520.1 of the Government Code, a portion of the County Employees Retirement Law of 1937.

''It is further stipulated that, subsequent to November 5, 1958, and prior to January 6, 1960, the said Herman Fisher and petitioner, Franklin S. Flaherty, had a conversation in which the said Herman H. Fisher said to the said petitioner Franklin S. Flaherty that he, Franklin S. Flaherty, could appear before the Board of Retirement with his attorney, if he so wished, and personally present his application for service-connected retirement and evidence sustaining such application; that such appearance would do no harm but that it was unnecessary, and that he could present his case as well merely by written evidence submitted to the Board of Retirement.

''It is further stipulated that if the above facts, or any of them, are deemed by the Court to be material, such facts so deemed material shall be deemed to be within the issues of this case.''

court below as to any lack of such notice or opportunity, as he could have done if there had been such defect. (See *Fascination, Inc.* v. *Hoover*, 39 Cal.2d 260, 266 [246 P.2d 656].) On November 5, 1958, the board had before it Captain Flaherty's application for disability retirement in which he made reference to the report of his attending physician. Dr. Haft and Dr. Heder each made a written statement on a form entitled "Statement of Employee's Attending Physician." Part of Dr. Haft's statement was: "When did the first symptoms of the condition causing this disability appear? Injured 7-27-57." Dr. Heder's answer to the same question was: "7-27-57." Also in the record was Captain Flaherty's letter of August 29, 1958, to the State Compensation Insurance Fund in which he requested that a transcript of his medical reports and records be sent to "my employer, Los Angeles County Department of Forester and Fire Warden." In that letter he stated that he wished to present his application at the "Retirement Board meeting to be held October 1, 1958 and records to be considered must reach the Board by September 10, 1958." There appears to have been compliance with such request inasmuch as the record contains reports and statements which had been addressed to the State Compensation Insurance Fund. One of such reports was that of Donald W. Ross, M.D., dated April 7, 1958. It contained a diagnosis of the condition he found; the last sentence of that part of the report was: "I do not believe that trauma is considered as an etiological factor in most instances." He further commented: "It is very difficult for me to form an opinion as to whether or not some injury was sustained to both of this patient's knee[s] by playing volley ball as described. It could be that the volley ball might be considered as an aggravating factor for a previously existing condition, but I believe that this is not quite tenable. In other words, I feel that it is appropriate to make the statement that in all likelihood this man's complaints are not due to an industrial injury per se." Another of such reports was that of Alvia Brockway, M.D., dated August 15, 1958. Therein Dr. Brockway stated: "Whether or not the present disability of the knees is the result of a specific injury such as might be sustained playing volley ball is, I think, open to some question. . . . It seems most likely that there was a certain amount of chondromalacia changes of the femurs previous to the injury, but probably the condition has not sufficiently advanced so that the patient was particularly aware of any pain and it is possible that the exertion of

playing volley ball may have been the precipitating cause of the onset of his first symptoms.'' The minutes of the board meeting of November 5, 1958, state that the action of the board was based upon the report of Dr. Heder and the opinion of Dr. Heidbreder.

In the answer and return of the board to the petition filed in the superior court it is stated that the board heard testimony of Dr. Heidbreder on November 5, 1958, and that while no phonographic record was made of such testimony, it was substantially the same as the statements in Dr. Heidbreder's letter of November 3, 1958, which was before the board. After reviewing statements of Dr. Heder, Dr. Ross, Dr. Haft and Dr. Brockway, Dr. Heidbreder stated in that letter: ''Service connection, in the opinion of the writer, has not been established.'' Since the petitioner Flaherty did not controvert by pleading or proof in the court below the affirmative allegations as to the substance of Dr. Heidbreder's testimony, such allegations are to be taken as true. (*Hunt* v. *Mayor & Council of the City of Riverside,* 31 Cal.2d 619, 623 [191 P.2d 426]; *Kimberlin* v. *Los Angeles City High School Dist.,* 115 Cal.App.2d 459, 464 [252 P.2d 344]; see 32 Cal.Jur.2d, Mandamus, § 66.) It was the statutory function of the county health officer to act as the adviser to the board on medical matters. (Gov. Code, § 31530.) Dr. Heidbreder appears to have acted on behalf of such officer as his deputy.[8] But, in any event, the failure to require Dr. Heidbreder to take an oath as a witness would not appear to have been of such a prejudicial nature as to preclude consideration of his statements. (See *Jackson* v. *City of San Mateo,* 148 Cal.App.2d 667, 669-670 [307 P.2d 451].) Moreover, if his statements be disregarded, the evidential matter submitted to the board by the applicant was not such as to sustain, much less to compel, a finding that the applicant's disability was a result of injury or disease arising out of and in the course of his employment.

Two other meetings were held at which action on the application was taken by way of reconsideration, one being on May 6, 1959, and the other on January 6, 1960. In the stipulation set forth in footnote 7, the statements of Herman Fisher, an alternate member of the board, were declared to have been

---

[8]Dr. Heidbreder was a member of the staff of the Health Officer of the County of Los Angeles. Section 31530 of the Government Code provides: ''The county health officer shall advise the board on medical matters and, if requested by the board, shall attend its meetings.''

made "subsequent to November 5, 1958, and prior to January 6, 1960." In the absence of testimony by Captain Flaherty in the court below, it would be mere speculation to infer that such statements were made before the meeting of May 6, 1959. At that meeting, in addition to the evidentiary matter heretofore discussed, the board had before it Dr. Haft's letter of November 26, 1958, in which his only statement bearing on the issue of causation was: "Please note that Mr. Flaherty was disabled as the result of an industrial accident which occurred on 7-27-57." In addition, the record contained Chief Klinger's letter of December 2, 1958, in which reconsideration was asked, the report of Dr. Lambert who had examined the applicant on March 30, 1959, at the request of the board, and a letter from Dr. Heidbreder under the date of April 10, 1959. Dr. Heidbreder testified, his testimony being in substance the same as the statements contained in his letter. Based upon his personal examination, the record of the operation by Dr. Haft upon the applicant, and the history received from the applicant, Dr. Lambert expressed his opinion in his letter of April 3, 1959, in part as follows: "It is, therefore, my opinion that the patient's disability that he has now is due to a non-industrial injury." In Dr. Heidbreder's letter, after quoting a part of Dr. Lambert's report of April 3, 1959, he states that such report substantiates his opinion that "service-connection had not been established." It is obvious that the evidentiary material before the board on May 6, 1960, was not such as to require the board to find in favor of Captain Flaherty on the issue before it.

Although the stipulation with respect to the statements of the alternate member of the board shows that such representations were made to Captain Flaherty prior to the board meeting of January 6, 1960, there was no testimony in the court below that Captain Flaherty acted or failed to act in reliance thereon. But be that as it may, the only additional matter before the board on that date which was offered in support of the applicant's position was noted in the applicant's letter of December 1, 1959, in which he requested a reconsideration of his application and stated as follows: "I feel the following evidence warrants reconsideration and granting service connected retirement: 1. The Industrial Accident Commission's findings of fact, a 52% service connected permanent disability was granted. 2. The letter from department head Chief Klinger, which you already have in your files, stating that my activity when injured was in the course of employment while

following directives in rules and regulations. 3. The operating doctor's reports." Dr. Heidbreder's letter of January 5, 1960, to the substance of which he testified, was before the board; therein he stated that the Industrial Accident Commission had found on November 16, 1959, that Captain Flaherty did sustain an injury arising out of and occurring in the course of employment and thereby sustained permanent disability. He further said that he had "re-reviewed" the file, including the statements of the various physicians and surgeons, and that he was still of the opinion that "service-connection has not been established." It is a reasonable inference from the record that the board considered everything which the applicant asked it to consider. In the light of the additional matter submitted by the applicant, it cannot be said that the board was required to make a determination different from that theretofore made.

 It has been held that where there is a lack of notice of a hearing and of an opportunity to appear before a retirement board, the petitioner complaining thereof is "not obligated to show or attempt to show prejudice, that he was entitled then and now to stand upon the proposition that the proceeding before the board was and is void." (*Robinson* v. *Board of Retirement, supra,* 140 Cal.App.2d 115, 118.) In such a case, justice can only be attained by remanding the matter to the board for a new and proper hearing. The present case, however, does not appear to be of that nature. Rather, it is a case where the applicant submitted all evidentiary matter which he desired to have the board consider. If what has been herein set forth as the written statements and the testimony of Dr. Heidbreder be entirely disregarded, the case of Captain Flaherty is not strengthened.

This court has not overlooked the importance of the presence of the applicant, preferably with counsel, at a hearing where a factual question such as that involved in the present case must be determined by resort to the evidence of lay persons and medical experts. That the experts who express their opinions should be present subject to cross-examination, if a plenary hearing is to be had, is obvious. Moreover, an adequate record of the proceedings should be made so that a complete picture of the course thereof may be presented to the court in a proceeding such as the present. (See *Nishkian* v. *City of Long Beach,* 103 Cal.App.2d 749, 752 [230 P.2d 156]; *cf. Reardon* v. *City of Daly City,* 71 Cal.App.2d 759, 765 [163 P.2d 462].) But in the present case Captain Flaherty elected

not to appear personally before the board[9] and acquiesced in the consideration of hearsay evidence. Under such circumstances, he is not in a position to complain. (See *Fox* v. *San Francisco Unified School Dist.*, 111 Cal.App.2d 885, 891 [245 P.2d 603].) As said in the *Fox* case, at page 891: "Hearsay, even at common law, if unobjected to when offered, can be of probative value, and certainly occupies a similar position in an administrative proceeding such as this." Since a review of the record of the proceedings before the board shows that there is the required substantial evidence in support of its determination, such determination must stand. (See *Jenner* v. *City Council, supra,* 164 Cal.App.2d 490, 499-500.)[10]

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1962.

---

[9]Even if it be argued that Captain Flaherty did not appear at the last meeting of the board because he was misled by the statement of Fisher, he does not appear to have suffered prejudice thereby.

[10]The minutes of the several meetings of the board do not contain language embodying a finding of fact with respect to the factual issue in dispute. But as said in *Cantrell* v. *Board of Supervisors,* 87 Cal.App.2d 471 [197 P.2d 218], at page 479: "And in connection with the action of such commission and board, composed usually of laymen, the fact that a certain action is taken or recommendation made raises the presumption that the existence of the necessary facts had been ascertained and found. [Citations.] We cannot perceive wherein appellant has been prejudiced by the absence of formal findings under the facts here present." (See *Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867, 872 [206 P.2d 355]; *Rudolph* v. *Athletic Com.,* 177 Cal.App.2d 1, 16-18 [1 Cal.Rptr. 898].)