[Civ. No. 20186.   First Dist., Div. Two.   June 18, 1962.]

HARTFORD S. RAPP, JR., as Executor, etc., et al., Plaintiffs and Respondents, v. THE NAPA COUNTY PLANNING COMMISSION et al., Defendants and Appellants; IVAN SCHOCH et al., Interveners and Respondents.

Daniel K. York, County Counsel, and Francis H. Frisch for Defendants and Appellants.

Bronson, Bronson & McKinnon, Harold R. McKinnon and Robert H. Zeller for Respondents.

SHOEMAKER, J.—This is an appeal by The Napa County Planning Commission, the Board of Supervisors of Napa County, the individual members of both bodies, and Basalt

Rock Company, Inc., from a judgment directing the issuance of a peremptory writ of mandate commanding that a use permit granted to Basalt Rock Company, Inc., be vacated and set aside.

The facts are as follows: On May 5, 1959, Basalt Rock Company, Inc., filed an application with The Napa County Planning Commission for a use permit to operate a quarry and to transport shale by truck from the quarry to the state highway by way of the Oakville Grade Road. Thereafter, the commission conducted a number of hearings on the application, at which respondents, a group of property owners and other persons living or working within the area of the proposed operation, opposed the granting of the permit. On June 16, 1959, the commisison voted to approve the application and to grant the use permit. Respondents then appealed to the Board of Supervisors of Napa County. On July 28, 1959, the board voted to deny the appeal and to sustain the commission. On August 2, 1959, respondents filed a petition for writ of mandate in the Superior Court of Napa County. Subsequently, the court found that the planning commission and the board of supervisors had abused their discretion by refusing to consider evidence offered by respondents that the movement of the trucks along Oakville Grade Road, as opposed to the operation of the quarry itself, would result in detriment to the surrounding property. On December 1, 1959, the court issued a peremptory writ of mandate commanding the planning commission and the board of supervisors to vacate the use permit and to conduct further proceedings in accordance with the views expressed by the court.

In accordance with the court's order, the planning commission thereafter conducted a total of 15 additional hearings at which both sides presented evidence pertaining to the detriment which might result from Basalt's proposed trucking operations. At the conclusion of these hearings, on April 5, 1960, the commission once again voted to approve the application and grant the use permit. On August 2, 1960, the commission's findings were upheld by the board of supervisors.

Respondents then commenced the instant proceeding to obtain a writ of mandate vacating and setting aside the use permit. On April 14, 1961, the court entered judgment that the writ prayed for be issued. Appellants contend that this judgment must be reversed.

We call attention to the established rule that in a proceeding to obtain a writ of mandate for the purpose of

inquiring into the validity of any final administrative order or decision, the court's sole function is to determine from a review of the record whether there is sufficient evidence to sustain the ruling of the administrative body (Code Civ. Proc., § 1094.5) ; further, that in such an action, the trial court is confined to the evidence received by the administrative body, and, in reviewing that evidence, may not reweigh it but may only consider whether there is substantial competent and material evidence to sustain the findings of the board. (*Takata* v. *City of Los Angeles* (1960) 184 Cal.App.2d 154, 157 [7 Cal. Rptr. 516] ; *Marini* v. *Department of Alcoholic Beverage Control* (1960) 177 Cal.App.2d 785, 786 [2 Cal.Rptr. 714].)

█ A mere conflict in the evidence does not entitle the court to interfere, since it is bound to disregard the evidence contrary to that in support of the board's findings. (*Thompson* v. *City of Long Beach* (1953) 41 Cal.2d 235, 241 [259 P.2d 649].) █ In *Wood* v. *City Planning Com.* (1955) 130 Cal.App.2d 356, 363 [279 P.2d 95], the court stated the rule as follows : ''The weight of authority supports the pronouncement that in reviewing the acts of local administrative boards, the courts are limited to determining whether there has been an abuse of discretion, and the court is without power to try the issues de novo or to compel such boards to act in a particular manner. The writ of mandate cannot be used for the purpose of determining whether or not, in the opinion of the reviewing tribunal, the evidence was sufficient to support the decision complained of, provided the inferior tribunal or board had jurisdiction and the record discloses substantial evidence to support the decision. The court is not authorized to judge the intrinsic value of evidence considered by an administrative agency, nor to weigh it, if the record discloses substantial evidentiary support for the decision.'' In the light of these authorities, the sole question presented by this appeal is the presence or lack of substantial evidence in support of the commission's findings.

The facts in the present case reveal that Basalt's quarry was located upon land zoned for agricultural uses, and that the property bordering its proposed truck route along Oakville Grade Road was zoned for agricultural, watershed, and recreational uses. █ In accordance with the applicable Napa County zoning ordinances, use permits for the commercial excavation of natural materials may be issued in both of these zones if the planning commission shall find that the establishment, maintenance or operation of the use applied for will not

"be detrimental to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood of such proposed use" and will not "be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the County." (See Napa County Zoning Ordinance No. 186, §§ 31.04, subd. (a); 5.03, subd. (e); 7.01; and 30.05, subd. (d).)

At the hearings before the planning commission, there was testimony on behalf of Basalt that the excavation itself would involve no noise other than the sound of a tractor because the shale was of a type which could be removed by scraping rather than blasting. There was expert testimony that the operation of the quarry would have no adverse effect on the surrounding property; that agriculture constituted the best and highest use to which the land could be put; that the operation of the quarry would have no effect on this use; and that the land in the immediate vicinity of the quarry was of no particular value whatever.

In regard to the proposed truck transportation over the Oakville Grade Road, there was evidence that Basalt had entered into a contract with the County of Napa for the improvement of that portion of the road which its trucks would travel. Pursuant to this contract, Basalt, if granted a use permit, agreed to undertake the major cost of improving and widening the existing county road. There was testimony that this new road would be much better than any that the county currently had in its road system; that its structural design would be as good or better than the state requirements for major county roads; and that it would be safe for Basalt's trucks and all other forms of traffic utilizing it. As to the trucks which Basalt proposed to use, there was evidence that they would be equipped with three separate and distinct braking systems and the best mufflers available in the industry. There was also evidence that the trucks would be operated at a top speed of 10 miles per hour on an upgrade in order to achieve the lowest noise level possible, and that every precaution would be taken to keep the trucks completely dust-free.

As to the actual effect of the truck traffic upon residents of the surrounding area, there was testimony by an acoustics expert that the trucks would not adversely affect the peace, quiet or enjoyment of the homes abutting the road; that sound tests made in the vicinity of the Oakville Grade Road established that the truck noises were generally indistinguishable

from the normal ambient level of the area; and that other recorded noises such as farm tractors, passing planes, pick-up trucks, and mooing cows, showed a decibel rating equal to that of the Basalt trucks.[1]

There was also evidence that there would be no detriment to property values in the vicinity of the Oakville Grade Road.

Upon this evidence, the planning commission found that Basalt's proposed operations would not be detrimental to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the area, nor would they be injurious to property and improvements or to the general welfare of the county. The commission found specifically that the neighborhood of Basalt's property was sparsely settled; that the proposed use would not interfere with any lawful use of other property in the area; and that Basalt's use of its property for the extraction of natural materials was a lawful use; and thereupon granted Basalt's application for a use permit, subject to the requirement, among others, that Basalt maintain effective dust control, eliminate undue noise, and conduct its operation in a safe manner.

The lower court, in issuing its writ of mandate, found that the planning commission's findings were not supported by substantial evidence in the light of the whole record of the hearings. It concluded, from its own review of the evidence, that ''the operation of said quarry in the manner proposed would inevitably result in substantial detriment to the peace, comfort and general welfare of persons residing or working in the neighborhood of such proposed use,'' and that no other deduction could reasonably be drawn from the evidence.

We are satisfied that the trial court, in so holding, chose to substitute its own judgment for that of the planning commission, which it completely lacked the power to do, for as was said in *Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348 [203 P.2d 37], at page 361, ''Whether or not the granting of the permit herein was wise as a matter of policy is something which is beyond the courts to determine unless the ordinance under which such action is taken is unconstitutional or void. The rule is indelibly written into our law that all questions of policy and wisdom concerning matters of municipal affairs

---

[1]Although respondents point out that the acoustics expert's sound readings were largely of gas rather than diesel trucks, the record contains no evidence that this did not constitute a valid sampling of the equipment which Basalt proposed to use. Basalt's president testified that only two or three of the company's 80 trucks were diesel-powered.

are for the determination of the legislative governing body of the municipality and not for the courts."

In the case at bar, the planning commission conducted a total of 19 hearings, at which evidence was presented by both sides, and based thereon the commission was certainly in a position to arrive at an informed opinion and conclusion. Respondents do not contend that the commission's findings were tainted with fraud or malice. The record itself contains abundant evidence to the effect that Basalt's operation would be conducted in a safe, dust-free and relatively quiet manner, and that it would not have an adverse effect upon property values in the surrounding area. Furthermore, the commission itself attached numerous restrictive conditions to the exercise of the use permit.

In view of the foregoing, it is apparent that there was no abuse of discretion on the part of the planning commission or the board of supervisors.

Judgment granting the writ of mandate is reversed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied July 9, 1962, and respondents' petition for a hearing by the Supreme Court was denied August 15, 1962.