[Civ. No. 774. Fifth Dist. Aug. 29, 1967.]

HUGH F. GRANT, Plaintiff and Appellant, v. BOARD OF RETIREMENT OF THE KERN COUNTY EMPLOYEES' RETIREMENT ASSOCIATION et al., Defendants and Respondents.

Louis R. Stein for Plaintiff and Appellant.

Ralph B. Jordan, County Counsel, and M. W. Creagh, Deputy County Counsel, for Defendants and Respondents.

CONLEY, P. J.—This is an appeal from a judgment of the Superior Court of Kern County refusing to issue a writ of mandate requiring the Board of Retirement of the Kern County Employees' Retirement Association to grant to Hugh F. Grant a service-connected disability retirement. The basis of the judgment of the superior court is that the refusal of the board, after a formal hearing, to grant such service-connected disability retirement is supported by substantial evidence to the effect that the petitioner's disability did not arise out of, and was not incurred in, the course of his employment by the County of Kern. It would appear that the judgment of the superior court, on the grounds stated, is sound under the authorities, and that the judgment must be affirmed.

At the outset, it should be noted that the Industrial Accident Commission, in connection with Mr. Grant's employment by the County of Kern, previously made an award at complete variance with the finding of the Kern County Employees' Retirement Association Board of Retirement. Such a determination by the Industrial Accident Commission is not, however, binding upon the retirement board, or, in other words, it is not res adjudicata as to the question of whether the present disability of the petitioner was caused as a result of, or in the course of, his employment by the County of Kern. The retirement board had valid, independent rights with respect to determining whether the petitioner suffered injury in the course and within the scope of his employment by the County of Kern. (*Flaherty* v. *Board of Retirement*, 198 Cal.App.2d 397 [18 Cal.Rptr. 256].)

Mr. Grant was Kern County building inspector from June 19, 1950, to March 18, 1964, when he suffered a first heart attack consisting of a myocardial infarction. He returned to part-time work on June 1, 1964, for about two weeks and then to full-time employment. He suffered a second myocardial infarction on November 5, 1964. There is no question but that he is now totally and permanently disabled.

Evidence was received at the hearing before the board that Grant was "conscientious and dedicated," and that he worked hard at his job. He was formerly a carpenter; he worked for some 14 years as a building inspector before suffering his first heart attack. His work required considerable traveling in Kern County, involved investigation and enforcement of building regulations, the hearing of complaints from the public, and "occasional verbal and physical abuse." In the year 1963, his workload was increased by the consideration of planning and zoning board regulations and review of business licenses. His employment was extensive as to the hours involved, and rather irregular; on occasion he performed some work during weekends at the office and outside. Telephone calls came to him at his home. Long hours, pressure, frustration, tension, stress, and emotional strain, in the opinion of several experts, were characteristic of his employment.

It appears that for some time before September 1963, Grant had experienced shortness of breath and occasional vague, fleeting chest pains. On September 3, 1963, he was examined by Dr. Hans Einstein, who testified before the board and gave a rather complete account of his view of the case; his testimony was the chief item negativing retirement for service-connected disability. On this first examination, Dr. Einstein found no evidence of cardiac disease, but thought that the shortness of breath and chest pain had no special significance, in view particularly of other features of the examination. He then permitted him to return to his regular work without any restrictions.

On March 18, 1964, Mr. Grant returned from his day's work feeling tired, became ill after dinner, was hospitalized, and was found to have suffered a myocardial infarction.

Quoting from appellant's opening brief: "The work piled up during the summer vacations and he had to relieve the chief building inspector and do the engineer's work. As time went on, he became more tense and irritable, weary and short-tempered, and worried about his work. He was no longer the same person. Unable to sleep, even with sleeping pills, he had constant fatigue. When angry, he would get shaky, nervous, upset and have chest pain. He began experiencing increased and more frequent chest pain and shortness of breath, took more nitroglycerin and other medications."

The second heart attack came, as already stated, on November 5, 1964. Quoting again from appellant's opening brief:

"On that morning, after hearing complaints and griping of other inspectors and having an argument. he felt severe chest and left arm pain. He was unable to move his jaws or speak. He was taken immediately to Dr. Bosonetto's office and then hospitalized for thirty days. He was found to have had a second myocardial infarction. Since then, he has not worked and he has remained under the regular care of his physician for his heart condition."

The respondents point out that the Board of Retirement of a County Employees' Retirement Association, in deciding whether an employee is entitled to retire, performs a quasi-judicial function (*Flaherty* v. *Board of Retirement. supra,* 198 Cal.App.2d 397) ; that the use of the writ of mandate, as in this case, to review final administrative action is properly termed "administrative mandamus," as it is a proposed remedy pursuant to section 1094.5 of the Code of Civil Procedure (*Allen* v. *Humboldt County Board of Supervisors,* 220 Cal.App.2d 877, 882 [34 Cal.Rptr. 232] ) ; that the proceeding in the superior court is in no sense a trial de novo (*Flaherty* v. *Board of Retirement, supra,* 198 Cal.App.2d 397, *Rapp* v. *Napa County Planning Com.,* 204 Cal.App.2d 695 [22 Cal.Rptr. 643] ) ; and that the only legitimate function of the superior court in considering mandate as applied to the situation is whether or not the retirement board had substantial evidence to support its decision (*Rapp* v. *Napa County Planning Com., supra,* 204 Cal.App.2d 695, 697-698; *Schneider* v. *Civil Service Com.,* 137 Cal.App.2d 277, 284 [290 P.2d 306] ; *Corcoran* v. *San Francisco etc. Retirement System,* 114 Cal. App.2d 738 [251 P.2d 59].)

A substantial part of respondent's brief is devoted to an exposition of the statement, "The medical testimony in this case is obviously conflicting." The statement is correct. The petition for writ of mandate calls attention to the fact that the reports of Alan Frank, M.D., are that Mr. Grant's employment "materially and substantially contributed to his disability and that the work aggravated his arteriosclerosis and that he would not have become disabled except for his work. ' Reference is made to a form executed by Dr. T. Bosonetto, in which he states his opinion that the permanent disability of petitioner was caused by the nature and duty of his employment. Dr. Laurence Sagar was also of the opinion that Mr. Grant's work was a factor in precipitating both myocardial infarctions and that the second heart attack was "triggered" by the immediately preceding events on the job. On the

contrary, Dr. William C. Buss, Assistant Health Officer, concluded that the disability of Mr. Grant "is not service-connected." The principal detailed evidence which supports the finding of the retirement board was given by Dr. Hans Einstein of Bakersfield. While he concludes that the disability of Mr. Grant is total and permanent, he continues: "It is my further opinion that the disability of this person has not been caused by the nature and duties of his employment." Dr. Einstein testified at page 109 of the transcript of testimony before the retirement board: "There is no valid evidence that people working under stress have their [heart] attacks more frequently or earlier than those who make their living with their hands.

"There is, as a matter of fact, evidence that points the other way; that people in the so-called manual occupations have attacks more frequently and earlier in contradistinction to those of us who work with our heads.

"There is extensive research going on—and largely in San Francisco at the Harold Brunns Institute by Dr. Friedman—attempting to establish a correlation between personality types and stresses of an occupation or other nature and it is possible that ultimately some worthwhile results will be found by this group and others. But this is the main one working in this particular field so far and they have recently presented their fifteen-year study. They have come to no generally accepted valid conclusions. They have, however, a vast volume of data which hopefully will produce some correlation, but has not as yet."

The doctor was of the opinion that the work done by Mr. Grant for Kern County did not cause, or add to, the coronary illness from which he is suffering.

The second alleged ground for reversal of the judgment is thus stated in the brief of appellant: "The denial to Grant of a service-connected disability retirement rests upon an error of law that to establish the relationship of work effort and strain to a permanently disabling heart condition, the effort or strain must be unusual to the job." It seems to us that counsel for the petitioner thus sets up a strawman in this statement of a ground for the appeal, in order to demolish it and claim a reversal. A reading of Dr. Einstein's testimony gives no solid ground for the contention on the part of the petitioner that Dr. Einstein testified that unless there was some unusual factor relative to the illness in question there could be no holding that the disease arose in the course of the

employment. It is true that Dr. Einstein used this concept in a general discussion of the situation to the effect that there was no unusual departure from his work of many years immediately preceding the myocardial infarctions, but his testimony was quite clear that, in his opinion, there was nothing about the years of work, filled as they were with controversies with the public and contractors, that could be assigned as a total or contributing cause of the adverse heart condition.

In mounting his attack upon what seems a false assumption as to the breadth of Dr. Einstein's testimony, the petitioner stresses well-established principles, among them being that to prove a connection between a man's work and his disease, no traumatic injury is necessary, and that the exertion or strain alleged to have arisen from his work need not be unusual or other than that which occurred in the normal course of employment (*Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 492 [175 P.2d 823] ; *Madin* v. *Industrial Acc. Com.,* 46 Cal.2d 90 [292 P.2d 892] ) ; that the contribution of the employment to the sickness in question may be merely an acceleration or aggravation of pre-existing disease (*G. L. Eastman Co.* v. *Industrial Acc. Com.,* 186 Cal. 587 [200 P. 17] ) ; and that the foregoing rules have been applied to pension cases (*Buckley* v. *Roche,* 214 Cal. 241 [4 P.2d 929] ; *Wight* v. *City of Long Beach,* 114 Cal.App.2d 69 [249 P.2d 556] ; *Gilman* v. *City of Long Beach,* 111 Cal.App.2d 747 [245 P.2d 512] ; *Peters* v. *Sacramento City Emp. Retirement System,* 27 Cal.App.2d 10 [80 P.2d 179] ; *Dillard* v. *City of Los Angeles,* 20 Cal.2d 599 [127 P.2d 917] ; *Naughton* v. *Retirement Board of San Francisco,* 43 Cal.App.2d 254 [110 P.2d 714] ).

In view of the fact that there was substantial evidence before the retirement board that Mr. Grant's disability did not arise in whole or in part from, or in the course of, his employment, the trial court was correct in denying the petition for a writ of mandate.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 25, 1967.